PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 97-4012

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03
THOMAS  K. KAHN
CLERK

D. C. Docket No. 96-329-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MODESTO HERNANDEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

**(July 17, 1998)**

Before EDMONDSON and BIRCH, Circuit Judges, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

On September 23, 1996, a jury found appellant Modesto Hernandez guilty of possession of a firearm by a convicted felon, possession of cocaine with the intent to distribute, and use of a firearm in relation to a drug trafficking crime.  He was sentenced to 387 months of imprisonment and was to be deported upon the completion of his imprisonment as a condition of his supervised release.  On appeal, he argues that his conviction on the three counts is tainted by the

prosecution's improper closing argument and by other prosecutorial misconduct. Hernandez also challenges the sentence imposed, arguing that the district court erred in determining that his prior narcotics convictions qualified him as a career offender under U.S.S.G. § 4B1.1. For the following reasons, we affirm the conviction, vacate the sentence, and remand for resentencing.

## I. BACKGROUND

### A. Pre-Trial

On March 27, 1996 and March 29, 1996, acting on a tip from a confidential informant, agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") conducted surveillance of Hernandez, a Cuban immigrant residing in Miami, Florida. On April 1, 1996, the surveillance continued and on that morning, the ATF agents met with the confidential informant and placed a wire transmitter on the informant and gave him a tape recorder. The agents instructed the informant to grab his wrist as a signal if he saw a firearm in Hernandez's possession.

Later on that same morning, Hernandez met the informant at the informant's house and the two men drove away in Hernandez's car, a Toyota Camry. The pair drove to several places, finally arriving at a gas station, where the informant got into a different car, a white Chevrolet. The informant and Hernandez then proceeded to drive in the two vehicles to a location near downtown Miami, Florida. Hernandez then exited the Camry he was driving and got into the Chevrolet with the informant, and the pair drove away.

At this point, the ATF agents lost their surveillance of Hernandez and the informant. Realizing this, the informant paged the agents, and they returned to the informant's house to resume their surveillance. Hernandez and the informant returned to the informant's house with Hernandez driving the Chevrolet. The informant got out of the car, grabbed his wrist, and went into his house

2

for a brief period. Upon his return to the vehicle, he grabbed his wrist again before reentering the car. With Hernandez driving, the two men drove to a coffee shop, where the informant got out of the car to go into the shop. While the informant was inside the coffee shop, the ATF agents arrested Hernandez. In the middle of the front seat of the Chevrolet the agents found a loaded pistol, a cellular telephone, a pager, two loose .25 caliber bullets, a roll of duct tape, a 35-millimeter film canister, and flex cuffs.[1] Inside the film canister, agents found three small bags of cocaine powder, weighing 1.5 grams, and forty-three rocks of crack cocaine, weighing 6.6 grams. The handgun was a Phoenix Arms, Raven model, .25 caliber semi-automatic pistol, manufactured in California. None of the items found in the vehicle were submitted for fingerprint analysis.

After arresting Hernandez, the ATF agents took Hernandez to the local ATF office, where after receiving his Miranda rights, Hernandez admitted to owning both the pistol and the drugs found in the film canister. Hernandez also stated that he had acquired the pistol for 25 dollars in a crack cocaine exchange. He maintained, however, that the drugs were for his personal use.

On April 9, 1996, a federal grand jury in the Southern District of Florida returned a three count indictment against Modesto Hernandez, charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and the use of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). Prior to trial, the district court, upon a motion by Hernandez's counsel, held a hearing to resolve the issue of the disclosure of the confidential informant's identity. The district court granted the disclosure motion and allowed Hernandez's counsel to question the informant, who was present at the hearing.

---

[1]Flex cuffs are temporary handcuffs.

B. Trial

The trial commenced on September 18, 1996. During the trial, district court ruled that the prosecution was precluded from introducing the informant's hearsay statements concerning the investigation. During the direct examination of prosecution witness and ATF Agent Dennis Greene, Greene sought to explain that it was the informant's signal that tipped off the agents that Hernandez was in possession of a firearm. On five different occasions during his direct, Greene sought to explain certain signals and statements made by the informant. Three of the five occasions dealt with the informant's use of the wrist-grabbing signal. Defense counsel objected on each of the five occasions on the grounds of hearsay, and the trial court sustained counsel's objections to the introduction of such evidence on all but one occasion.[2]

The trial proceeded to closing argument. Before closing arguments were given, the trial court instructed the jury to pay close attention to the arguments, but that the arguments were not

_____

[2]The testimony that the trial court found not to be hearsay went as follows:

Q (prosecution): Where did the informant go after he got out of the car?

A: He went into his residence for a brief period of time; returned back outside and again grabbed his wrist.

Defense counsel: Objection. Hearsay.

Court: Grabbing the wrist, is that what you said?

A: Yes.

Court: It's not a statement. It's an action. Did you observe that?

A: Yes.

Court: Overruled.

4

evidence. In his initial closing argument, the prosecuting attorney outlined what the evidence at trial had shown, and what inferences could and should be drawn from the evidence. The prosecution acknowledged the burden of proof belonged to the government. In her closing argument, counsel for Hernandez argued that the informant had set up Hernandez by placing the gun and the drugs in the car. In support of this theory, defense counsel questioned at some length the government's failure to produce the confidential informant, stating:

> . . . [B]ut the biggest thing is why didn't the confidential informant come in and testify as a witness? Why? He was in the car. Why?
> Now I will suspect the government will say, Ms. Short [defense counsel] has the subpoena power. Ms. Short could have called the witness here to take the stand. And yes, we do have the subpoena power. But why?
> Well, Detective Andrade told you confidential informants buy drugs. They're criminals. They do these things to work off their cases.
> Why would anyone call a witness like that? Why would anyone - - is this the kind of witness that can give credible testimony? And you know if he could, the government would be the first one to call [him] and tell you what really happened that day.
> More importantly, why didn't the government call the confidential informant? This confidential informant worked with these agents. This confidential informant was under the supervision of these agents, and they didn't call him to take the stand.
> Ladies and gentleman, you better believe this confidential informant would have gotten up here and said, yes, it happened the way they said it happened. They would have called him. But if - - there is something wrong with this confidential informant not being able to give credible testimony.
> That is the biggest question, when you go back there, why didn't the government call the confidential informant?

In its rebuttal, the prosecution argued that defense counsel's theory of the case was absence of evidence, stating:

> It is much easier to raise questions than it is to answer it, folks, isn't it? It is much easier to raise questions. She starts first with where is the confidential informant? Well, where was the confidential

informant? Remember Special Agent Greene told you the informant was not too confidential to Ms. Short because she met the informant before.

Defense counsel objected to the prosecution's argument and moved to strike the statement and the trial court sustained her objection and granted the motion to strike. Immediately after the trial court's ruling the prosecution continued by pointing out that Agent Greene had testified that the informant was in the courthouse. Again, defense counsel objected, but this time the trial court overruled her objection.

During her closing argument, defense counsel pointed out that there was no evidence that the ATF agents ever searched the informant, making it entirely possible that he planted the drugs and pistol.[3] The prosecution responded to this argument by stating in their rebuttal, "She says, well, there was no proof the agents ever patted down the informant. A real convenient time to raise that question, when she could have asked it of the agent." Defense counsel objected, and after argument at side bar, the court found that while the prosecution acted in good faith, such an argument was improper and the objection was sustained.

In response to the defense's argument as to why the government did not test the articles on the front seat for fingerprints, the prosecution stated that no tests were run because Hernandez admitted the articles were his, adding, "Don't you think if there was evidence about the gun being fingerprinted, and the drugs being fingerprinted, Ms. Short would be up here singing a different tune." The trial court sustained defense counsel's objection to this statement.

---

[3]"Now, at no point did any of the agents say that they searched this confidential informant prior to meeting Modesto Hernandez. And as you can see, that is very important because this gun is a relatively small gun that can be easily hidden, and these drugs are relatively small."

At the completion of the closing arguments, the trial court issued its jury instructions. Among other instructions, the court instructed the jury to remember that only evidence was to be considered during their deliberation, and that what the lawyers had to say was not evidence in the case. The trial court also instructed the jury regarding the burden of the prosecution in the trial, and of the right of the defendant not to produce any evidence at all. The trial court explained the elements of each count and the jury retired to deliberate. Upon its return, the jury found Hernandez guilty of each count in the indictment.

## C. Sentencing

A probation officer prepared a Pre-Sentence Investigation Report ("PSI") to assist the trial court in setting Hernandez's sentence. In calculating the sentence that Hernandez was to receive, the probation officer reviewed Hernandez's present narcotics conviction and his two prior Florida felony drug convictions and applied the "career offender" provisions under U.S.S.G. § 4B1.1 (1995),[4] which set Hernandez's offense level at level 34 and his criminal history at category VI. Hernandez filed timely objections to the PSI, and asserted that he did not have the requisite convictions to qualify him as a "career offender" under U.S.S.G. § 4B1.1. Hernandez contended that the 1993 Florida state court convictions may have been for the mere purchase of narcotics, and as

---

[4]At the time of Hernandez's sentencing, United States Sentencing Guideline § 4B1.1 provided:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

7

such neither qualified as a "controlled substance offense" under U.S.S.G. § 4B1.2 (2) (1995).[5] He

pointed out that the alleged prior controlled substance offenses necessary to confer "career offender"

status were both pursuant to a Florida statute which made both sale or purchase of narcotics a crime.

Further, the judgments against Hernandez under this statute did not indicate whether the convictions

were for sale or purchase of narcotics. Given the ambiguity, Hernandez argued the convictions

should be treated as purchase convictions. Hernandez further argued that the trial court was

precluded from looking to the underlying facts of each conviction to determine if the convictions

were for purchase or sale.

At the sentencing hearing, the trial court noted that there was an ambiguity in the statute and

in the judgments. In order to resolve the ambiguity, the trial court reviewed the police arrest

affidavits underlying the Florida convictions and determined that the affidavits made clear that

Hernandez was arrested for the sale of narcotics rather than the purchase of narcotics, and as such

the "career offender" enhancement should apply. The court sentenced Hernandez to 387 months of

imprisonment and to deportation upon the completion of his imprisonment as a condition of his

supervised release. Hernandez then filed this appeal.

## II. ANALYSIS

A. Prosecutorial Misconduct

---

[5]At the time of sentencing, United States Sentencing Guideline § 4B1.2 (2) provided:

> The term "controlled substance offense" means an offense under a
> federal or state law prohibiting the manufacture, import, export,
> distribution, or dispensing of a controlled substance (or a
> counterfeit substance) or the possession of a controlled substance
> (or a counterfeit substance) with intent to manufacture, import,
> export, distribute, or dispense.

Hernandez contends that the prosecution tainted the jury's consideration of the evidence by repeatedly eliciting improper hearsay, that the prosecution improperly sought to shift the burden of proof at trial and that the prosecution maligned defense counsel's character in front of the jury, and that such misconduct caused sufficient prejudice to Hernandez so as to warrant a reversal of his conviction. We disagree. Because we find Hernandez's argument regarding hearsay to be without merit and unworthy of discussion, we turn our attention to two issues arising from the prosecution's closing argument. "Prosecutorial misconduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the defendant's substantive rights." United States v. Delgado, 56 F.3d 1357, 1368 (11th Cir. 1995). In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury. See United States v. Young, 470 U.S. 1, 11-12 (1985); see also United States v. Stefan, 784 F.2d 1093, 1100 (11th Cir. 1986).

1. Burden-shifting

Hernandez contends that the prosecutor, in his rebuttal argument, created a non-existent relationship between the confidential informant and defense counsel which left the jury with the impression that defense counsel had an equal if not elevated duty to use its subpoena power to produce the informant at trial. Additionally, when the prosecution contended that defense counsel could have asked ATF Agent Greene whether agents searched the informant prior to the operation, Hernandez argues the prosecution created an additional burden-shifting argument. We find no merit to Hernandez's burden-shifting arguments. First, while a prosecutor may not comment about the absence of witnesses or otherwise attempt to shift the burden of proof, it is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, "particularly

9

when done in response to a defendant's argument about the prosecutor's failure to call a specific witness." United States v. Blackman, 66 F.3d 1572, 1578-79 n.7 (11th Cir. 1995). Second, a comment by the prosecutor on the failure by defense counsel, as opposed to the defendant, to counter or explain evidence does not violate a defendant's Fifth Amendment right not to testify. See United States v. Watson, 866 F.2d 381, 386 (11th Cir. 1989). Here the prosecutor merely emphasized the defense's failure to produce testimonial evidence to rebut the reasonable inference that the informant was not carrying the pistol and drugs prior to his meeting with Hernandez.[6] Accordingly, such an argument was permissible. See United States v. Johnson, 713 F.2d 633, 651 (11th Cir. 1983).

Moreover, the burden-shifting argument by Hernandez is undermined by the trial judge's response to the alleged improper argument. In an exercise of caution, the trial court sustained objections by defense counsel to both of the alleged improper burden-shifting statements, going so far as to strike the prosecutor's statement that the defense counsel had met the informant before. Additionally, any potential prejudice regarding burden-shifting was diminished by the prosecution's statement in their closing argument that the burden of proof was theirs to carry and by the trial court's explicit instruction after closing arguments to that same effect. See United States v. Simon, 964 F.2d 1082, 1087 (11th Cir. 1992). Accordingly, we find that even if the remarks at issue could be said to be improper, we find no prejudice to Hernandez's substantive rights.

2. Impugning Remarks

---

[6]This inference is especially reasonable in light of Hernandez's post-arrest statement that the pistol and the drugs were his.

Hernandez also argues that the prosecutor's closing arguments were improper because they contained an impermissible attack on defense counsel in her role as advocate. Defense counsel argued that there was no evidence at trial of fingerprint analysis of the gun and the film canister, and that it was possible that the reason no tests were run on these items is that the government was afraid of what they would find. The prosecution responded in rebuttal that if the government had produced fingerprint evidence, defense counsel would be "singing a different tune." Defense counsel objected to this statement and the trial court sustained defense counsel's objection. We find that casting such an aspersion on defense counsel was probably improper. In determining the likely prejudice from such a comment, we must look at the comment in the context of the trial. See Stefan, 784 F.2d at 1100. We note that defense counsel immediately objected to the improper comment and that the trial court sustained the objection. We note that the trial court instructed the jury both before closing arguments and after the closing arguments that the arguments were not evidence and that the jury was to decide Hernandez's guilt based solely on the evidence. Under such circumstances, the statement by the prosecutor is not sufficiently egregious so as to mandate a reversal of Hernandez's conviction. See United States v. Gonzalez, 122 F.3d 1383, 1389 (11th Cir. 1997); see also United States v. Clark, 480 F.2d 1249, 1254 (5th Cir. 1973). Accordingly, we affirm the conviction.

B. Errors in Sentencing

Hernandez argues on appeal that (1) the district court erred in its review of the underlying conduct behind Hernandez's prior narcotics convictions and in determining that Hernandez's prior convictions constituted qualifying offenses for "career offender" status pursuant to U.S.S.G. § 4B1.1, and (2) the district court erred in sentencing Hernandez to be deported as a condition of his supervised release in violation of the rule of law articulated in United States v. Romeo, 122 F.3d 941

11

(11th Cir. 1997).[7]  We review the district court's interpretation of the Sentencing Guidelines de novo.  See United States v. Spell, 44 F.3d 936, 938 (11th Cir. 1995).

In 1993, Hernandez pled nolo contendere to two separate narcotics offenses pursuant to Florida Stat. § 893.13(1)(a), which in 1993 stated, "it is unlawful for any person to sell, purchase, manufacture, deliver, or possess with the intent to sell a controlled substance."[8]  The language in Hernandez's 1993 Florida state convictions tracked the language in the statute and thus did not indicate whether his convictions were for the purchase of controlled substances or for the sale of controlled substances.  The difference is an important one because under U.S.S.G. § 4B1.2(b), a conviction for the mere purchase of controlled substances is not a "controlled substance offense" necessary for the "career offender" enhancement under U.S.S.G. § 4B1.1.

Despite the apparent ambiguity of the language of the statute and of the convictions, the probation officer in preparing Hernandez's PSI used these 1993 convictions to enhance Hernandez's sentence as a "career offender."  When Hernandez objected to the PSI and pointed out the existing ambiguity to the district court at the sentencing hearing, the district court resolved the ambiguity by reading the arrest affidavits supporting Hernandez's 1993 convictions.  The district court determined that it was abundantly clear from the affidavits that Hernandez was arrested each time for the sale of controlled substances.  The district court then enhanced Hernandez's sentence pursuant to the "career offender" enhancement of U.S.S.G. § 4B1.1.

_____

[7]Appellant did not raise the Romeo issue in his briefs to this court, but did raise the issue at oral argument.

[8]For the issues relevant to this opinion, a nolo contendere plea is equivalent to a guilty plea.

12

Hernandez is correct in his argument that the district court erred in resolving the ambiguity in the 1993 convictions in the manner in which it did. It is not the conduct for which Hernandez was arrested which is the determining factor of whether each 1993 conviction was a "controlled substance offense." Rather, the focus of the inquiry must be upon "the conduct of which the defendant was convicted." Spell, 44 F.3d at 940, quoting U.S.S.G. § 4B1.2, comment (n.2). Here, while it may be clear what Hernandez was arrested for, it is unclear exactly what Hernandez pled to, and consequently the district court did not have the evidence before it necessary to enhance Hernandez's sentence under U.S.S.G. § 4B1.1. "The fact that Appellant's conviction was obtained through a plea agreement heightens our concern that Appellant's sentence enhancement may rely upon a crime for which he was never convicted." Spell, 44 F.3d at 940. The burden of proof for establishing that a sentence enhancement is warranted lies with the prosecution and it is the duty of the district court to insure that the prosecution carries its burden of proof. See United States v. Lawrence, 47 F.3d 1559, 1566-69 (11th Cir. 1995). The inquiry in resolving the ambiguity of the 1993 convictions should not involve a retrial of the prior convictions, but should be limited to examining easily produced and evaluated court documents, such as any helpful plea agreements or plea transcripts, any presentencing reports adopted by the sentencing judges, and any findings made by the sentencing judges. See Spell, 44 F.3d at 939.

Hernandez also contends that the district court erred in ordering him deported as a condition of his supervised release, and asks this court to vacate his sentence. It is not a matter of dispute between the parties that the sentence imposed by the district court violates the rule of law articulated in Romeo, which states that under the new immigration laws, district courts no longer have the

independent, legal authority to order deportation. 122 F.3d at 943-44. On resentencing, the district court will doubtlessly take Romeo into account.

In accord with our established precedent, since we must vacate the sentence based upon status as a "career offender" and that portion of the sentence dealing with deportation, we vacate the entire sentence and remand for resentencing. "Multiple count convictions present the trial judge with the need for a sentencing scheme which takes into consideration the total offense characteristics of a defendant's behavior. When that scheme is disrupted because it has incorporated an illegal sentence, it is appropriate that the entire case be remanded for sentencing." United States v. Lail, 814 F.2d 1529, 1530 (11th Cir. 1987), quoting, United States v. Rosen, 764 F.2d 763, 767 (11th Cir. 1985).

### III. CONCLUSION

For the foregoing reasons, the conviction of Hernandez is affirmed and his sentence is vacated. The matter is remanded for resentencing.

Conviction AFFIRMED; Sentence VACATED and REMANDED for Resentencing

14