

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2002

# USA v. Knox

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3488

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Knox" (2002). *2002 Decisions.* Paper 435.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/435

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 01-3488


UNITED STATES OF AMERICA

v.

GREGORY KNOX
a/k/a "Rashad"
a/k/a Gregory Terrell
a/k/a Gregory Anderson

Gregory Knox,
                    Appellant


On Appeal from the United States District Court
       for the District of New Jersey
       (D.C. Crim. No. 99-cr-00060-3)
   District Judge:  Hon. Stephen M. Orlofsky


Submitted Under Third Circuit LAR 34.1(a)
              July 22, 2002

Before:  SLOVITER, NYGAARD, and BARRY, Circuit Judges

(Filed: July 25, 2002)


OPINION OF THE COURT SLOVITER, Circuit Judge.

Gregory Knox appeals from the judgment of sentence.  After indictment in the United States District Court for the District of New Jersey, Knox pleaded guilty to one count of conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine, contrary to 21 U.S.C.  841(a)(1), in violation of 21 U.S.C.  846. The District Court sentenced Knox to 240 months imprisonment.  In this appeal, Knox challenges the District Court's calculation of drug amount, its finding that Knox played a managerial role pursuant to U.S.S.G.  3B1.1(b), and its finding that Knox's prior state burglary conviction qualifies as a "crime of violence" under U.S.S.G.  4B1.2(a)(2).  We will affirm.

The District Court had jurisdiction under 18 U.S.C.  3231.  This court has jurisdiction pursuant to 28 U.S.C.  1291 and 18 U.S.C.  3742.  As part of his plea agreement, Knox and the government stipulated that the 1998 edition of the Sentencing Guidelines applies.

We review "a district court's finding of fact supporting an upward adjustment to a sentencing level for clear error."  United States v. Bethancourt, 65 F.3d 1074, 1080 (3d Cir. 1995).  A district court does not commit clear error unless its factual findings are "completely devoid of a credible evidentiary basis or bear[] no rational relationship to the supporting data."  United States v. Haut, 107 F.3d 213, 218 (3d Cir. 1997) (quoting American Home Prods. Corp. v. Barr Labs., Inc., 834 F.2d 368, 370-71 (3d Cir. 1986)).

I.

Knox argues first that the District Court clearly erred in attributing 15 to 50 kilograms of cocaine to him.  The PSI's determination that Knox was responsible for 15

to 50 kilograms of cocaine was based on information supplied by a confidential informant, Edward Gardner, and the sworn statement of Special Agent Scott Forbes. Knox argues that these were unreliable hearsay. The Commentary to the Sentencing Guidelines makes clear that the District Court is not limited to admissible evidence in making determinations of drug quantity as long as the information has sufficient indicia of reliability. U.S.S.G. 6A1.3(a). We cannot say the District Court clearly erred in accepting the 15 to 50 kilogram figure.

In any event, although Knox disputes much of the evidence the District Court relied on to calculate drug quantity, Knox concedes that his admissions to a probation officer that he sold 35 to 40 grams of cocaine per week from 1996 until his arrest in February of 1999 constitute reliable evidence. Reply Br. of Appellant at 7-8. He acknowledges that extrapolation over even the limited duration of the conspiracy to which he admits "yields a total in excess of six kilograms." Id. at 8. Knox urges that under United States v. Paulino, 996 F.2d 1541 (3d Cir. 1993), these six kilograms should be "decreased to account for off-days, periods when cocaine was difficult to obtain, or the time period that [he] was hospitalized for an ankle injury." Reply Br. of Appellant at 8. The cases are not apposite.

In Paulino, the government had proposed a drug quantity of 255 kilograms by extrapolating for a period of over two years from testimony regarding sales made on a single evening. The district court reduced the government's estimate to a range of 127 to 140 kilograms "to take into account the days in which sales were not that high or days in which no sales were made." Id. at 1548. We rejected the defendants' arguments that the range should have been even lower and held that the district court's findings were not clearly erroneous.

Of course, our determination that the district court's drug quantity calculation in Paulino was not clearly erroneous does not mandate the halving of drug quantity estimates in every case. Notably, in this case the six kilograms were extrapolated from a confession by Knox himself estimating his average weekly sales during a period spanning over three years. In contrast, the estimate in Paulino was based on the testimony of a sole witness regarding sales made on a single evening. In calculating his weekly sales, Knox himself presumably accounted for "off days," as his admission was, "I estimate that I sold on the average about 35 to 40 grams of cocaine per week." PSI 69 (emphasis added).

Even were we to determine, based on the six kilograms which Knox concedes are grounded in reliable evidence, that he was responsible only for 5 to 15 kilograms of cocaine, his total offense level would be 36, resulting in a guideline range of 324 to 405 months. U.S.S.G. Ch. 5, Pt. A. His sentence could not lie below the statutory maximum of 240 months. See 21 U.S.C. 841(b)(1)(C); U.S.S.G. 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."). Accordingly, any error would have been harmless. See 28 U.S.C. 2111 (2002); Fed. R. Crim. Proc. 52(a).

II.

We consider next Knox's argument that the District Court erred in finding that he played a managerial or supervisory role in criminal activity involving five or more participants, under U.S.S.G. 3B1.1(b). Based on that finding, the District Court granted a three-level upward adjustment.

Under 3B1.1(b), a defendant's offense level is increased by three levels "[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. 3B1.1(b). Knox does not argue that he did not manage or supervise others. Instead, he contends that the criminal activity in which he engaged did not involve five or more participants.

Knox argues that "[s]ince [his] criminal responsibility under the guidelines was limited to the acts that he personally committed and there were no findings made at sentencing that the conduct of others was relevant to the offense of conviction, there was no legal basis for the district court to conclude that [his] criminal activity involved five or more participants." Reply Br. of Appellant at 9-10. By this argument, Knox appears to suggest that because the District Court did not find him accountable for the drug amounts attributable to his codefendants in calculating drug quantity, it erred in holding him responsible for his codefendants' participation in the conspiracy in assessing whether the

criminal activity involved five or more participants. Knox supports his contention that no finding was made at sentencing that the conduct of others was relevant based on the fact that drug quantity in the PSI was calculated based on the amounts individually distributed by Knox, "not overlapping amounts with other defendants." PSI at 31.

We first note that although the PSI may have been calculated based on Knox's individual drug amount, the District Court stated that the drug quantity of 15 to 50 kilograms attributed to Knox was "a conservative estimate of the drug quantity in this case." App. at 23. Section 1B1.3(a)(1)(B) requires a sentencing court to assess a defendant's relevant conduct based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." It is not at all clear th the District Court did not evaluate Knox's relevant conduct based on the reasonably foreseeable acts and omissions of his coconspirators. Of course, even if the probation officer or District Court were mistakenly lenient in calculating drug quantity based solely on Knox's individual conduct, that error would not insulate Knox from a proper upward adjustment under  3B1.1(b).

Credible evidence supports the District Court's determination that Knox participated in a criminal activity involving five or more participants. In a June 15, 2000 letter to the probation officer who prepared the PSI, Knox conceded that he purchased cocaine from Belarmino Rodriguez (a/k/a Belanchi) in New York, and that he employed Patrice Dowe to purchase and transport cocaine from New York. PSI  70. In an affidavit, Special Agent Forbes stated that Knox also directed the courier activities of Edward Garner (who subsequently became a confidential informant) and Rajah Miller. App. at 64-65. Forbes observed that "a number of sources of information confirm that [Michael] Shepherd acted at Knox's behest in storing and obtaining weapons," and in carrying out cocaine deliveries. App. at 65; see also PSI   28, 71. Forbes also reported that "wiretapped conversations suggest . . . that Knox from time to time provided . . . guidance to . . . James Hatton," a drug dealer who used Knox as a cocaine source. App. at 66. The PSI observes that "Hatton order[ed] quantities of cocaine from Gregory Knox that substantially exceeded the quantities that could be intended by Hatton for personal use. In these conversations, Hatton discus[sed] with Knox the difficulties associated with the operations of Hatton's drug-dealing business that included the collecting of drug-related debts from cocaine buyers." PSI   28. We cannot conclude that the District Court's finding that the criminal activity involved five or more participants was clearly erroneous.

III.

Knox also argues that the District Court erred in classifying him as a career offender. Specifically, Knox disputes the District Court's determination that his prior burglary conviction was a "crime of violence." The Sentencing Guidelines define "crime of violence" to include a burglary of a dwelling. U.S.S.G.  4B1.2(a).

In 1990 Knox was charged in a New Jersey state indictment with "unlawfully enter[ing] the structure and/or separately secured or occupied portion thereof, of Craig Off, at 201 New Road Absecon, New Jersey with the purpose to commit an offense therein." App. at 88. Knox pleaded guilty. The statute to which Knox pleaded guilty, N.J. Stat. Ann.  2C:18-2 (West 2002), is broad enough to criminalize both the entering of a dwelling and the entering of a commercial establishment. Under similar circumstances, we have held that "in the absence of conclusive proof," a sentencing court may consider "certain easily produced court documents, such as plea colloquy" in determining whether a conviction qualifies as a predicate offense for purposes of U.S.S.G.  4B1.2. United States v. Hernandez, 218 F.3d 272, 279 (3d Cir. 2000).

Here, the District Court found that

[i]t's clear to me that there is evidence in the record which indicates that the upstairs apartment was in fact burglarized. Mr. Knox's account, which is set forth under "defendant's account" in the police report says, "on 2/22/90 I went into a property in Absecon with intent to steal something. I did not have permission to enter the property." I think that that coupled with the language I quoted earlier in the police report relating to the ransacking of the upstairs apartment, plus a fair reading of the indictment to which Mr. Knox pled guilty, convinces me that the government has proven . . . by a preponderance of the evidence that Mr. Knox committed a burglary of a residence . . . .

App. at 43.  The PSR explains that the language of the indictment "incorporate[s the charge of a burglary of a dwelling] by referring to the occupied portion of Craig Off's property."  PSR   106a.

Citing the Eleventh Circuit's decision in United States v. Hernandez, 145 F.3d 1433 (11th Cir. 1998), Knox argues that the District Court erred in relying on the arrest report.  In Hernandez, the district court had resolved ambiguities in whether prior convictions constituted qualifying offenses for career offender status pursuant to U.S.S.G.   4B1.1 by relying solely on "arrest affidavits."  The court of appeals determined that the sentencing court erred by relying on the affidavits, because "[i]t is not the conduct for which [the defendant] was arrested which is the determining factor . . . . [r]ather, the focus of the inquiry must be upon 'the conduct of which the defendant was convicted.'" Hernandez, 145 F.3d at 1440.

Knox's argument is not persuasive.  We agree that there is some ambiguity as to whether Knox was convicted of the burglary of a residence, but we cannot say that the District Court's resolution of that ambiguity is "completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data."  Combined with the other evidence considered by the District Court, the indictment may be fairly read to charge Knox with burglarizing the residence of Craig Off.  Accordingly, the District Court did not clearly err.

IV.

For the reasons set forth, we will affirm the judgment of the District Court.

_____

TO THE CLERK:

Please file the foregoing opinion.


/s/Dolores K. Sloviter
Circuit Judge