[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11478
Non-Argument Calendar

_____

D. C. Docket No. 03-60179-CR-KAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NOEL YOUNG,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 18, 2006)**

Before BARKETT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Noel Young appeals his convictions and sentence for (1) making, passing,

and selling counterfeit currency in violation of 18 U.S.C. §§ 2 and 471-73; (2) possessing document-making implements with the intent that they be used to make false identification documents in violation of 18 U.S.C. § 1028(a)(5); and (3) being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On appeal, Young argues that the district court erred by (1) denying his motion for judgment of acquittal; (2) denying his motion to suppress evidence; (3) denying his motion for mistrial based on prosecutorial misconduct; and (4) enhancing his sentence based on extra-verdict facts.  We address each issue in turn.

## I.  MOTION FOR JUDGMENT OF ACQUITTAL

We review de novo the district court's denial of a defendant's motion for judgment of acquittal.  United States v. Perez-Tosta, 36 F.3d 1552, 1556 (11th Cir. 1994).  To uphold such a denial, "this Court need only determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt."  United States v. Pistone, 177 F.3d 957, 958 (11th Cir. 1999).  We must view all reasonable inferences in favor of the government.  Perez-Tosta, 36 F.3d at 1556.

## A.  COUNTERFEITING CHARGES

We conclude, based upon the evidence in this record, taken in the light most

favorable to the government, that a reasonable fact-finder could certainly have found Young guilty of making, passing, and selling counterfeit currency, or at least, of aiding and abetting such conduct. The evidence established more than one witness's account of Young's involvement in the offense. First, United States Secret Service Special Agent Kenneth Manderson testified at trial that he had made a number of purchases of counterfeit money from Young and Lebert with Keino Lewis ("Keino"), a confidential informant, and that Lebert had told Manderson that he used Young's machine to print the counterfeit bills. Second, Keino testified at trial that he had observed Young making the counterfeit money, and both Young and Lebert cutting the money, during a controlled purchase on July 7, 2003. Specifically, Keino testified that he observed Young printing money from a printer connected to a laptop and cutting the money with scissors. Keino also testified that, during another purchase, Young got angry because Keino and Manderson were counting the counterfeit money in public, and Young told Keino not to do that again. Third, Lebert testified that he and Young had been making counterfeit money and identification documents together, and that Young's role was to help cut the currency. Lebert also testified that the batch of currency they sold to Keino on July 7 had been printed at his apartment on a printer he and Young had asked Young's girlfriend to buy for them. Lebert also testified that he and Young had

3

made the counterfeit money involved in another transaction with Keino in Young's girlfriend's apartment, where Young also lived.

Because the evidence sufficiently supports Young's convictions, the district court did not err in denying Young's motion for judgment of acquittal on this charge.

B.  DOCUMENT-MAKING IMPLEMENTS CHARGE

Young also argues that the evidence was not sufficient to support his conviction for a violation of 18 U.S.C. § 1028(a)(5) because he only possessed the Eltron P310 Card Maker for the legitimate purpose of using it in his father's trucking business.  Young also asserts that Lebert testified that Young did not know that Lebert had made fraudulent identifications and social security cards.

The evidence does not support Young's argument because Lebert testified that, while Lebert and Young initially purchased the Card Maker for Young's father's trucking business, they both used the device for illegal purposes.  Young did not present any evidence in contradiction of Lebert's testimony.  Even assuming that Young possessed the Eltron P130 Card Maker purely for legitimate purposes, Young fails to address the mountain of other document-making implements that were found at his apartment, including: (1) software capable of making counterfeit money; (2) images of personal signatures; (3) graphical files

4

representing a Florida driver's license strip; (4) photographs; (5) software capable of making identification cards; (6) images of social security cards; and (7) a box of blank white cards used to make driver's licenses and ID's. Based upon this evidence, a reasonable fact-finder could have found Young guilty of possessing "document-making implement[s] . . . with the intent such document-making implement[s] . . . will be used in the production of a false identification document . . . ." See 18 U.S.C. § 1028(a)(5). Accordingly, the district court did not err in denying Young's motion for judgment of acquittal on this basis.

## C. FIREARM AND AMMUNITION CHARGES

Young next argues that, given the inconsistent statements that his girlfriend, Jamiliah Brown, made to police concerning ownership of the firearm and ammunition, no reasonable juror could have relied on her testimony as the basis for Young's convictions as to counts five and six. Young asserts that, because Brown's contradictory testimony is the only evidence tending to show that he was the possessor of the firearm, the evidence is insufficient to establish his guilt.

Here, while Brown admittedly provided false statements to the police, Young's counsel cross-examined her on the topic of her false statements. After Brown had testified on direct and Young's counsel cross-examined her, the ultimate determination with regard to her credibility was left to the jury. See

5

Parrado, 911 F.2d 1567, 1571 (11th Cir. 1990) ("Credibility determinations are the exclusive province of the jury"), citing United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981) (stating that the jury is entitled to believe the government's witnesses even if they consist of "an array of scoundrels, liars and brigands"). Finding that Brown made the false statements because of her feelings for Young and the pressure she felt from Young to lie is not an unreasonable conclusion for a juror to make. Moreover, the evidence that Young lived at the apartment, kept his clothes in the closet, and had a key to the apartment demonstrates that Young had "the power and intention to exercise dominion or control" over the firearm and ammunition contained in the master bedroom closet. See United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004). Therefore, because a reasonable fact-finder could determine that the evidence established Young's guilt beyond a reasonable doubt, the district court did not err in denying Young's motion for judgment of acquittal.

## II. MOTION TO SUPPRESS

Young also argues that the district court erred in denying his motion to suppress because the warrant issued to search his apartment was not supported by probable cause. Young contends that, at the time of the issuance of the warrant, there was unsubstantiated evidence that Lebert had entered apartment #1805

6

(Young's apartment) while the police were surveilling Lebert. Young further asserts that the police could not be sure that Lebert exited apartment #1805 on his way to complete the fraudulent identification card transaction. Young thus maintains that, based on the totality of the circumstances, the district court should have granted his motion to suppress.[1]

In this case, the affidavit for the search warrant, which Special Agent Freund prepared, indicated that the officers were aware of the following information at the time of the affidavit: (1) Keino, the confidential informant in this case, had met with Lebert and Young to exchange counterfeit currency; (2) Young was at Lebert's apartment when Lebert gave Keino the counterfeit currency; (3) Young accepted the genuine currency in exchange for the counterfeit currency; (4) Keino met with Young and Lebert on another occasion to again transfer counterfeit currency; (5) officers witnessed Lebert entering Inverrary Gardens apartment complex and Lebert later informed officers that he had been making false identifications at an apartment within the complex; (6) after Lebert's arrest, Lebert told officers that Young's apartment was located at 4200 Inverrary Gardens, Apartment #1805, and that Lebert had made fraudulent identifications there; and

---

[1] We review the district court's denial of a motion to suppress under a mixed standard, reviewing questions of fact for clear error and the district court's application of law to those facts de novo. United States v. Jiminez, 224 F.3d 1243, 1247 (11th Cir. 2000).

(7) Lebert told officers that the identification-making equipment belonged to Young and was located at Young's apartment.

Considering all the information that Special Agent Freund submitted to the court in the affidavit for the search warrant, and in light of the fact that Young only challenges the surveillance issue on appeal, it is clear that "the totality of the circumstances allow a conclusion that there [was] a fair probability of finding contraband or evidence" at Young's apartment. United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). Thus, the district court did not err in determining that probable cause supported the search warrant.

## III. MOTION FOR MISTRIAL

Young argues on appeal that the district court abused its discretion in denying Young's motion for a mistrial. Young contends that the prosecutor's act of questioning Brown concerning Young's custodial status warranted a mistrial.[2] Young maintains that the prosecutor's statement, that Young was in custody, "had no relevance and was extremely prejudicial."

---

[2] Specifically, Young objects to the following redirect examination of Brown:
> Q: Now, the fourth statement that you gave on January 13th, when you said that you had no idea about the gun at the residence and you didn't know who the gun belonged to, those were lies, weren't they?
> A: Yes, correct.
> Q: And again you were still trying to protect your boyfriend?
> A: Yes.
> Q: Because you still were seeing him at the jail, weren't you?

8

We review the district court's denial of a motion for mistrial for abuse of discretion. United States v. Knowles, 66 F.3d 1146, 1163 (11th Cir. 1995). We will reverse a defendant's conviction on the basis of prosecutorial misconduct only where the prosecutor's remarks were "(1) improper and (2) prejudiced the defendant's substantive rights." United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998); see also United States v. Abraham, 386 F.3d 1033, 1036 (11th Cir. 2004) (explaining that prosecutorial misconduct requires a reversal of a defendant's conviction only where the defendant's substantial rights were prejudiced "in the context of the entire trial in light of any curative instruction"). "In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury." Hernandez, 145 F.3d at 1438.

In this case, while Young maintains that the prosecutor's comment was prejudicial, he fails to indicate precisely how the comment prejudiced his substantial rights as to warrant a mistrial. Given the overwhelming evidence of Young's guilt, mentioned above, it is unclear in what manner the prosecutor's comment that Young had been incarcerated could have impacted the jury so that it would have been inclined to find Young guilty regardless of the other evidence. In other words, Young has not established that, but for the prosecutor's remark, the

9

jury would have found him not guilty. No mention of Young's custodial status was again made by the prosecutor or any witness. Further, Young declined the court's offer to provide a curative instruction to the jury. Based on the foregoing, the district court did not err in denying Young's motion for a mistrial.

## IV.  SENTENCE ENHANCEMENTS

Young argues that the district court violated his Fifth and Sixth Amendment rights by enhancing his sentence based on facts that were neither charged in his indictment nor found by a jury. Young specifically argues that his sentence enhancements based on (1) his obstruction of justice, (2) the face value of the counterfeit currency involved in the crime totaling between $30,000 and $70,000, and (3) the offense involving between 25 and 99 counterfeit documents, violated the rules set forth in Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).

Young properly preserved his claim in the district court by objecting under Blakely and Booker to the district court's use of facts found by a preponderance of the evidence to enhance his sentence. See United States v. Dowling, 403 F.3d 1242, 1245-46 (11th Cir.) (explaining the ways an appellant can preserve a Booker claim). Since Young timely raised a Booker objection in the district court, we review the claim on appeal de novo, but reverse only for harmful error. See United

10

States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

In Booker, the Supreme Court held that the Federal Sentencing Guidelines violate the Sixth Amendment right to a trial by jury to the extent that they permit a judge to increase a defendant's sentence based on facts that are neither found by the jury nor admitted by the defendant. Booker, 543 U.S. at 244. To remedy this violation, the Court excised two specific provisions of the Sentencing Reform Act of 1984, thereby rendering the guidelines "effectively advisory." Id. at 245-46. As a result, a sentencing court must still "consider Guidelines ranges," but it may "tailor the sentence in light of other statutory concerns as well." Id. at 245-46.

In Rodriguez, we clarified that Booker error "is not that there were extra-verdict enhancements - enhancements based on facts found by the judge that were not admitted by the defendant or established by the jury verdict - that led to an increase in the defendant's sentence. The error is that there were extra-verdict enhancements used in a mandatory guidelines system." Rodriguez, 398 F.3d 1291, 1300 (2005) (emphasis added). We further explained that "the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional." Id. at 1301; see also United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005) (holding that "[n]othing in Booker is to the contrary" of a district court decision to base sentence enhancements, under an advisory guidelines scheme, on facts found

11

by a preponderance of the evidence that were not charged in the indictment).

Young's challenge to his sentence on appeal is that the district court violated Booker and Young's constitutional rights by enhancing his sentence based on facts not charged in his indictment or found beyond a reasonable doubt by a jury. At sentencing, the district court adopted the PSI's applicable guidelines range calculation. Nothing in Booker precluded the court from finding that the PSI's enhancements were supported by a preponderance of the evidence. See Chau, 426 F.3d at 1324. The court then explicitly recognized that the guidelines were advisory and considered other sentencing factors, as mandated in 18 U.S.C. § 3553(a). Thus, the district court did not err in enhancing Young's sentence based on extra-verdict facts.

Upon review of the record, and consideration of the parties' briefs, we discern no reversible error. Accordingly, we affirm Young's convictions and sentence.

**AFFIRMED.**