[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 13, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10098
Non-Argument Calendar

_____

D. C. Docket No. 05-20807-CR-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK JOHNSON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 13, 2008)**

Before BIRCH, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Frederick Johnson, Jr., appeals his conviction and 97-month sentence for conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. Johnson raises several issues on appeal, which we address in turn. After review, we affirm Johnson's conviction and sentence.

I.

Johnson first asserts the district court erred in denying his motion to suppress his post-arrest statements because the rights waiver form that he signed did not adequately inform him of his constitutional rights.

We review a district court's findings of fact in resolving a motion to suppress for clear error and the court's application of the law to those facts *de novo*. *United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000). A suspect "held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today." *Miranda v. Arizona*, 86 S. Ct. 1602, 1626 (1966). "Opportunity to exercise these rights must be afforded to him throughout the interrogation." *Id.* at 1630. The Supreme Court later clarified, however, that *Miranda* warnings do not have to be provided in the exact form as stated in that decision, as "no talismanic incantation is required to satisfy its strictures." *Duckworth v. Eagan*, 109 S. Ct. 2875, 2880 (1989) (quotations

2

omitted).  The Court further found that, where the defendant was informed, *inter alia*, of his right to speak to an attorney before and during questioning and to stop the questioning at any time and speak with an attorney, these statements "touched all of the bases" required by *Miranda*.  *Id.*; *see also United States v. Street*, 472 F.3d 1298, 1311-12 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 2988 (2007) (noting the defendant in *Duckworth* was "fully and completely advised of all of his rights").  In order for a defendant's incriminatory statements to be admissible, the government must prove by a preponderance of the evidence the defendant made a knowing, voluntary, and intelligent waiver of his *Miranda* rights.  *United States v. Farris*, 77 F.3d 391, 396 (11th Cir. 1996).

Although the rights waiver form Johnson signed did not specifically advise him of his right to consult with an attorney during questioning, it advised him he had the right to talk to a lawyer before questioning, to have a lawyer present with him during questioning, and to stop the questioning at any time until he spoke with a lawyer.  Because *Miranda* requires a suspect be informed of his rights to "consult with a lawyer and to have the lawyer with him during interrogation," and Johnson was apprised of both of these rights, the waiver form was sufficient, and Johnson made a knowing, voluntary, and intelligent waiver of his rights.  *See Miranda*, 86 S. Ct. at 1626, 1630; *see also Farris*, 77 F.3d at 396.  Accordingly, the district

3

court did not err in denying Johnson's motion to suppress his post-arrest statements.[1]

## II.

Johnson next contends there was an insufficient basis for the voice identification Detective Tillman made of Johnson. Johnson did not object on this basis at trial, so we review this claim under a plain error standard. *See United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity or public reputation of the judicial proceedings." *United States v. Hall*, 314 F.3d 565, 566 (11th Cir. 2002).

Voice identification testimony can be admitted only after it is determined sufficient evidence supports a finding "the matter in question is what its proponent claims." Fed. R. Evid. 901(a). A speaker's voice may be identified by opinion testimony "based upon hearing the voice at any time under circumstances

---

[1] Johnson also summarily argues his statements should not have been admitted because he was impermissibly questioned by an officer prior to waiving his *Miranda* rights and that he felt threatened by Detective Wayne Tillman. The magistrate judge made an adverse credibility determination regarding Johnson's testimony at the suppression hearing, which the district court affirmed. Because Johnson has not offered any other evidence on these issues or shown how the district court committed clear error when it determined his testimony was not credible, these arguments are without merit. *See United States v. Pineiro*, 389 F.3d 1359, 1366 (11th Cir. 2004) (reviewing a district court's credibility findings for clear error).

connecting it with the alleged speaker." Fed. R. Evid. 901(b)(5). "Once a witness establishes familiarity with an identified voice, it is up to the jury to determine the weight to place on the witness's voice identification." *Brown v. City of Hialeah*, 30 F.3d 1433, 1437 (11th Cir. 1994).

Detective Tillman testified he heard Johnson's voice three times prior to the date on which he made his identification. This was sufficient to establish his familiarity with Johnson's voice. *See* Fed. R. Evid. 901(b)(5). Accordingly, the district court did not plainly err in permitting the voice identification to go to the jury, as it was up to the jury to determine the weight to place on Detective Tillman's identification. *See Brown*, 30 F.3d at 1437.

### III.

Johnson also asserts the district court erred in prohibiting him from eliciting the exculpatory portions of his post-arrest statement from Detective Tillman. Because Johnson did not make an objection to the limitation of Detective Tillman's cross-examination during the trial, we review the district court's evidentiary ruling for plain error. *See Baker*, 432 F.3d at 1202. "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

5

Fed. R. Evid. 106. In light of Federal Rule of Evidence 611(a)'s requirement the district court exercise "reasonable control" over witness interrogation and the presentation of evidence to make them effective vehicles "for the ascertainment of truth," Rule 106 has been extended to encompass oral conversations. *United States v. Range*, 94 F.3d 614, 621 (11th Cir. 1996); Fed. R. Evid. 611(a). Accordingly, the exculpatory portion of a defendant's post-arrest statement should be admitted if it is: (1) relevant to an issue in the case; and (2) necessary to clarify or explain the portion received. *Range*, 94 F.3d at 621.

The district court did not plainly err by limiting the scope of Johnson's cross-examination of Detective Tillman because, although Johnson's exculpatory statements may have been relevant to his involvement in the offense conduct charged, they were not necessary to clarify those portions of the post-arrest interview related by the witness. *See id.* Detective Tillman's testimony was unambiguous and did not require any clarification or explanation, and regardless, the fact Johnson also stated in his interview that he was not involved in any criminal activity would not have clarified or explained the statements to which Detective Tillman testified.

IV.

Johnson contends the evidence presented at trial was insufficient to support his conspiracy conviction, as there was no evidence presented that he ever possessed any drugs or marked money used in the drug transactions. Where, as here, the issue of sufficiency of the evidence has been preserved, we review the sufficiency of the evidence to support a conviction *de novo*, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *See United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000). The district court's denial of a motion for judgment of acquittal "will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Id.* Determinations of the credibility of witnesses fall within the exclusive province of the jury and may not be revisited by us unless the testimony is "incredible as a matter of law." *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997).

"To sustain a conviction for conspiracy to possess cocaine with intent to distribute, the government must prove beyond a reasonable doubt that (1) an illegal agreement existed; (2) the defendant knew of it; and (3) the defendant, with knowledge, voluntarily joined it." *United States v. Hernandez*, 433 F.3d 1328,

7

1333 (11th Cir. 2005) (quotations omitted). "Although mere presence at the scene of a crime is insufficient to support a conspiracy conviction, presence nonetheless is a probative factor which the jury may consider in determining whether a defendant was a knowing and intentional participant in a criminal scheme." *Id.* (quotations omitted). Moreover, a defendant's participation in a conspiracy can be established by circumstantial evidence, and the government need only prove that the defendant knew the general nature and scope of the conspiracy. *United States v. Anderson*, 326 F.3d 1319, 1329 (11th Cir. 2003).

The evidence was sufficient to sustain Johnson's conspiracy conviction. Although there was no photographic or recorded evidence, and Johnson was not found in possession of any marked money or drugs, Detective Tillman's testimony allowed the jury to make the following conclusions: (1) Johnson and Malcolm Williams called the CI together to arrange the drug transaction, after which Johnson called the CI on his own and told the CI to go through him for any other deals with Williams; (2) Johnson made specific references to narcotics in both of the conversations, showing he knew the nature of the illegal agreement; and (3) Johnson picked up the CI and drove him to his meeting with Williams, participated in the meeting, and then drove the CI back to his original location. Because Detective Tillman's testimony established Johnson facilitated the

transaction and participated in the discussions in the parking lot before the money and drugs were exchanged, a reasonable trier of fact could conclude Johnson was guilty beyond a reasonable doubt, as he knew of the existence of the illegal agreement and, with knowledge, voluntarily joined it. *See Hernandez*, 433 F.3d at 1333. Moreover, it was the province of the jury to assess the credibility of Detective Tillman, and it could find Johnson guilty beyond a reasonable doubt based on this testimony alone. *See Calderon*, 127 F.3d at 1324. Accordingly, sufficient evidence supported Johnson's conviction.

V.

Johnson also contends he was denied a fair trial because the prosecutor made an improper burden-shifting argument and improperly attempted to bolster the credibility of one of its witnesses during its closing argument. Prosecutorial misconduct during closing argument, including an improper burden-shifting argument and improper vouching, requires a new trial only where the remarks were improper and prejudiced the defendant's substantial rights. *United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would be different." *Id.* (quotations omitted).

9

*A. Burden shifting*

Johnson objected to the prosecutor's alleged burden-shifting comment at trial, and therefore, the claim of prosecutorial misconduct, which generally involves mixed questions of law and fact, is reviewed *de novo*. *See United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997). "[W]hile a prosecutor may not comment about the absence of witnesses or otherwise attempt to shift the burden of proof, it is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, particularly when done in response to a defendant's argument about the prosecutor's failure to call a specific witness." *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998) (quotations omitted). Moreover, any potential prejudice regarding burden-shifting is diminished by the prosecutor's statement during closing argument "that the burden of proof [is] theirs to carry and by the trial court's explicit instruction after closing arguments to that same effect." *Id.*

The prosecutor's comment the defense had the same subpoena power as the Government was made in response to Johnson's statement regarding a Government witness that was not called to testify. Such a statement is not improper, particularly when made in response to the defendant's argument about the government's failure to call a specific witness. *See Hernandez*, 145 F.3d at 1438.

10

Moreover, any potential prejudice this statement may have caused was alleviated by: (1) the prosecutor's statement that the Government held the burden of proof; and (2) the court's instruction to the jury that it was not improper for the prosecutor to note the defendant had the same subpoena powers as the Government, but the Government could not shift the burden of proof to the defense. *See id.* at 1439. Thus, the prosecutor's comment was not inappropriate, and did not prejudice Johnson's substantial rights.

B. *Improper vouching*

Because Johnson did not object to the prosecutor's comment until he filed his motion for a new trial, this comment is reviewed for plain error. *See United States v. Newton*, 44 F.3d 913, 920 (11th Cir. 1995) ("[a]bsent a contemporaneous objection, the propriety of the [g]overnment's closing argument and alleged prosecutorial misconduct in improperly vouching for a witness' credibility are reviewed under a plain error standard"). "Attempts to bolster a witness by vouching for his credibility are normally improper and constitute error." *Id.* We have held:

> When faced with a question of whether improper vouching occurred we ask: whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness's credibility. In applying this test, we look for whether (1) the prosecutor placed the prestige of the government behind the witness by making explicit assurances of the witness's credibility, or (2) the prosecutor implicitly

11

vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony.

*United States v. Castro*, 89 F.3d 1443, 1456-57 (11th Cir. 1996) (quotations and citation omitted). When the defense attacks the credibility of the government's witness, however, the prosecutor is "entitled to argue fairly to the jury the credibility of the government and defense witnesses." *United States v. Eley*, 723 F.2d 1522, 1526 (11th Cir. 1984).

The prosecutor's comment that Detective Tillman would use a valid CI because he would not risk his career did not amount to improper bolstering. During his closing statement, Johnson attacked Detective Tillman's credibility, stating he was desperate to use the CI as his ticket to federal agency employment. In direct response to this attack, the prosecutor told the jury that Detective Tillman was not so desperate to become a federal agent that he would risk his career by using a CI that was "not valid." A jury could not reasonably have believed the prosecutor was placing the prestige of the Government behind Detective Tillman by making an assurance about his credibility, or that he was implying evidence not presented to the jury supported the witness's testimony. *See Castro*, 89 F.3d at 1456-57. Instead, the prosecutor's comment was a fair argument defending the credibility of the Government's witness. Accordingly, the prosecutor's remark was not improper and did not prejudice Johnson's substantial rights.

VI.

Finally, Johnson contends the district court erred at sentencing because the five criminal history points it assessed against him over-represented his criminal history, as all five points were related to the same prior offense. We review *de novo* a claim the district court engaged in impermissible double counting during its calculation of the advisory guidelines range. *United States v. Phillips*, 363 F.3d 1167, 1168 n.2 (11th Cir. 2004). "'Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" *Id.* at 1168 (quotations omitted). Double counting is permissible when "(1) the Sentencing Commission intended the result, and (2) each guideline section in question concerns conceptually separate notions related to sentencing." *Id.* (quotations omitted).

Section 4A1.1(d) of the Sentencing Guidelines requires an addition of two points to a defendant's criminal history calculation if "the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). Section 4A1.1(e) provides that two criminal history points should be added "if the defendant committed the instant offense less than two years after

13

release from imprisonment on a sentence counted under [subsection] (a) or (b) . . . .

If 2 points are added for item (d), add only 1 point for this item."  U.S.S.G.

§ 4A1.1(e).  The commentary to § 4A1.1 recognizes the potential overlap of

subsections (d) and (e), but notes their importance to addressing separate

sentencing concerns, stating that subsection (d) "implements one measure of

recency . . . [subsection (e)] implements another measure of recency . . . [,]" and "a

defendant who falls within both (d) and (e) is more likely to commit additional

crimes; thus, (d) and (e) are not completely combined."  U.S.S.G. § 4A1.1,

comment. (backg'd).  The commentary provides that, because of their potential

overlap, the combined impact of the two subsections is limited to three points.  *Id.*

The Sentencing Commission intended for § 4A1.1(d) and (e) to apply

together in certain cases, as it specifically addressed the potential overlap and

noted that, although their combined effect would be to add an additional three

points to a defendant's criminal history instead of four, they were not completely

combined.  *See id.*; *see also Phillips*, 363 F.3d at 1168.  Therefore, the district

court's double counting was permissible, and the court's sentencing calculations

were correct.

VII.

First, the district court did not err in denying Johnson's motion to suppress his post-arrest statements because he was fully informed of his rights and voluntarily chose to waive them before speaking to law enforcement. Second, Detective Tillman heard Johnson's voice three times prior to identifying it on the date on which the offense occurred, so the district court did not plainly err in permitting his voice identification. Third, the district court did not plainly err in limiting the scope of Johnson's cross-examination of Detective Tillman by not allowing Johnson's exculpatory post-arrest statements to be admitted, because the statements were not necessary to clarify those portions of the post-arrest interview related by the witness. Fourth, the evidence presented was sufficient for conviction, as it showed that Johnson facilitated a drug transaction between two individuals. Fifth, the prosecutor did not improperly shift the burden to the defense during closing argument because he responded to a statement Johnson made in his closing argument and only told the jury the defense had the same subpoena power as the Government. The prosecutor also did not improperly bolster the credibility of a witness, as his comment was a fair argument defending the credibility of the witness after it was attacked by the defense. Finally, because the district court applied two subsections of the Sentencing Guidelines that were intended to address

15

different sentencing issues and be applied together when necessary, it did not err in calculating Johnson's criminal history category. Accordingly, we affirm Johnson's conviction and sentence.

**AFFIRMED.**