United States Court of Appeals,

Eleventh Circuit.

Nos. 92-8228, 92-8764 and 94-8376.

UNITED STATES of America, Plaintiff-Appellee,

v.

Joseph NEWTON, Eddie Gregory Batten, Robert Moss, Jr., John Brown, Jr., Grady D'Vaughn Reddick, Sean Jackson, Robert Jivens, Willie Lee Palmer, Sr., Defendants-Appellants.

UNITED STATES of America, Plaintiff-Appellee,

v.

Robert MOSS, Jr., Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Grady D'Vaughn REDDICK, Defendant-Appellant.

Dec. 22, 1994.

As Corrected by Order Dated Jan. 30, 1995.

Appeal from the United States District Court for the Southern District of Georgia. (No. CR491-176-3), B. Avant Edenfield, Chief Judge.

Before EDMONDSON and BIRCH, Circuit Judges, and HILL, Senior Circuit Judge.

ORDER

The court, on the panel's own motion, has reconsidered the opinion heretofore issued in these cases. Upon such reconsideration it appears that passages in the original opinion appear to ground the judgment of the court upon an erroneous premise. It is therefore ORDERED that the attached opinion is substituted as the opinion of the court.

Before EDMONDSON and BIRCH, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

Appellants Joseph Newton, Grady D'Vaughn Reddick, Willie Lee Palmer, John Brown, Jr., Robert Jivens, Sean Jackson, Eddie Batten, and Robert Moss appeal their convictions and sentences for conspiracy to distribute and to possess with intent to distribute cocaine, violating 21 U.S.C. § 846 (Count One). Moss appeals his conviction of employing persons under eighteen years of age to distribute controlled substances, violating 21 U.S.C. § 861(a)(1) (Count Two). Jivens, Moss, Batten, Brown, and Jackson appeal their convictions of using a firearm during a drug trafficking offense, violating 18 U.S.C. § 924(c) (Count Three). Reddick and Palmer, charged as aiders and abettors under Count One, appeal their convictions on substantive money laundering offenses, violating 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Four, Five, Six, and Seven). Newton and Moss appeal their convictions for using a communication facility to commit a drug felony, violating 21 U.S.C. § 843(b) and (c) (Counts Nine and Ten). For the reasons that follow, we affirm the convictions and sentences of Brown and Moss and reverse Reddick's convictions. The judgments of conviction and the sentences of Newton, Palmer, Jivens, Jackson, and Batten are affirmed without opinion. *See* 11th Cir.R. 36-1.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 1991, a federal grand jury indicted seventeen individuals as members of a crack cocaine distribution conspiracy who acted under the direction of and in concert with Ricky Maurice

Jivens.[1]  The conspiracy's genesis was in late 1988.  The locally notorious street-level crack gang routinely employed violence and was responsible for many homicides and aggravated assaults in Savannah.  To insure loyalty and to prevent members from readily turning on their former confederates, Ricky Jivens insisted on all of the principals' "getting down," that is, killing someone before receiving any sizeable quantity of "fronted" cocaine.  The Jivens organization was equally murderous in dealing with people who owed them money, stole from them or sought to, in Ricky Jivens' words, "switch out."

The rash of violence caused the assembly of a state and federal task force in January 1991, focusing on the gang's activities.  The gang's cohesiveness began to unravel when the Drug Enforcement Agency (DEA) task force was successful in infiltrating the group with undercover informants and in converting gang members to informants.[2]  Following the arrest of Ricky Jivens and Sean Jackson on September 20, 1991, the DEA agents obtained a series of search warrants and executed a coordinated series of raids the next

---

[1]Principal indictee Ricky Maurice Jivens entered a guilty plea to:  (1) conducting a continuing criminal enterprise (CCE) offense, 21 U.S.C. § 848 (Count Four);  (2) using a firearm during and in relationship to a drug trafficking crime, 18 U.S.C. § 924(c) (Count Three);  (3) a substantive money laundering offense, 18 U.S.C. § 1956(a)(1)(B)(i) (Count Five);  and (4) the general forfeiture allegation, 21 U.S.C. § 853 (Count Seventeen). Jivens was sentenced to life imprisonment without parole.  His sentencing appeal was affirmed by this Court. *United States v. Jivens,* 11th Cir., 1993, 996 F.2d 314.

[2]One informant, Frank Brown, was utilized by the agents to make some recorded undercover purchases of crack cocaine from Robert Jivens, Levon Bazemore and Robert Moss.  Immunized coconspirator Jerome Richardson consented to the DEA's placing audio and video bugging devices in a southside Savannah apartment the task force obtained for him.

morning, bringing Appellants into their net.  After indictment, a jury trial was held in January 1992.  With one exception, the jury convicted Appellants on all counts.[3]  The district court denied Moss' extraordinary motion for new trial.[4]  The remaining Defendants either pled guilty or their trials were severed from the main group.

## II. ISSUES ON APPEAL

Each of the three remaining Appellants raises many separate issues on appeal.[5]  Those issues with merit are:  (1) Moss contends that the district court erred in denying his motion for a new trial based on newly discovered evidence and in considering activities before his eighteenth birthday in applying the Sentencing Guidelines;  (2) Brown contends that during closing argument, the prosecutor improperly vouched for the credibility of his own witness;  and (3) Reddick asserts that the evidence was insufficient to support his convictions.

## III. DISCUSSION

A. *Moss' Rule 33 Motion*

Moss contends that the district court erred in denying his motion for new trial based on newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  He asserts that after trial it was ascertained that the testimony of a

---

[3]The court directed a verdict of acquittal for Robert Jivens on Count Two.

[4]Moss' appeal of that ruling has been consolidated with the direct appeal.

[5]All issues not listed here are without merit and warrant no discussion.

juvenile witness, identified as CJR, was in all likelihood perjurious concerning Moss' involvement in the murder of indicted drug dealer Antonio Anderson. CJR testified that he heard Moss' voice inside the drive-by car from which the fatal bullets were fired. CJR testified that Anderson was shot by two automatic weapons, a Tech-9 and an AK 47, from a distance of ten to fifteen feet. This testimony was later proved incorrect.[6] After trial, Savannah Police Department homicide records and Georgia Bureau of Investigation crime lab reports were discovered in the Government's possession by defense attorneys preparing for another case. These documents suggested that Anderson was shot at close range, six to eighteen inches, and died from gunshot wounds from a .38 or .357 pistol, not an automatic weapon. CJR also testified that Anderson was shot about 11:00 p.m. when the actual time of death was shown by the autopsy report and Savannah homicide records to be many hours earlier.

Moss contends that the Government's failure to provide him with copies of the reports prior to trial violates *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Government asserts that the reports were never in the actual physical custody of the prosecutor. It contends that the reports were mailed from the state crime lab to the state district attorney's office and inadvertently placed in a generic file cabinet. The Government also asserts that, even if Moss' defense

---

[6]The Government contends that CJR was not lying about the Anderson homicide but was merely mistaken, and that any impeachment of his testimony should be strictly limited to the murder.

attorney had been privy to this impeaching evidence prior to trial, it would not have changed the verdict. We agree.

1. *Standard of Review.*

The denial by the district court of Moss' extraordinary motion for new trial is reviewed for abuse of discretion. *United States v. Champion,* 813 F.2d 1154, 1172 (11th Cir.1987).

2. *Analysis.*

The Supreme Court has held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196-97. Evidence favorable to the accused includes impeachment evidence. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985). A constitutional error occurs, however, only if the suppressed evidence is material, *i.e.,* only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 680, 105 S.Ct. at 3383.

This court applies a four-prong test to decide whether a new trial is required because of a *Brady* violation. *United States v. Spagnoulo,* 960 F.2d 990, 994 (11th Cir.1992). To obtain a new trial, a defendant must show each of the following elements: (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the

favorable evidence;  and (4) that had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceedings would have been different.  *Id.* at 994.

After an evidentiary hearing on the Rule 33 motion, the district court found that although Moss proved the first three elements, he failed to prove the fourth because he could not show that the undisclosed evidence would have made any difference in the verdict.  The trial judge refused to grant Moss a new trial. Suppression of evidence results in constitutional error "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."  *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381.

The *Brady* rule protects a defendant from erroneous conviction and is not designed to punish the Government.  *See Jackson v. Wainwright,* 390 F.2d 288, 295 (5th Cir.1968).  A punitive element is, however, often enrobed in or accompanies a *Brady* violation, but it implicates the Government's lawyer  *qua* lawyer and not the Government as a party.  Should it appear that Government counsel has intentionally—or culpably carelessly—concealed known *Brady* material from a defendant, the lawyer is not absolved from that professional misdeed merely because the concealment is found not to have been material in the *Bagley* sense.

This record does not display intentional concealment;  the information in question was not in the possession of Government counsel.  It is not clear that more diligence would have discovered the material.  It would have shown CJR's testimony about the Anderson murder to have been inaccurate in several respects.  Moss

was not charged with Anderson's murder, but the inaccuracy would have been admissible for impeachment. However, considering the entire record, we conclude that the omission was not material in the *Bagley* sense. Its suppression does not "undermine confidence in the outcome of the trial." The record is replete with proof of Moss' involvement on the four counts on which he was charged without regard to CJR's testimony.[7] We therefore conclude that the district court did not abuse its discretion in denying Moss' motion for a new trial.

B. *Moss' Sentencing Appeal*

Moss contends that the district court should not have considered acts before his eighteenth birthday in determining the quantity of drugs attributable to him under the Sentencing Guidelines. Moss argues that "virtually all of the evidence cited by the Probation Officer at the sentencing hearing in support of his conclusion as to the quantity of drugs attributable to Moss

---

[7]The jury found Moss guilty of four counts: conspiracy to possess with intent to distribute cocaine; employment of a minor; use of a firearm; and use of a telephone in furtherance of a drug trafficking crime. The Government introduced surveillance videotapes showing Moss working with members of a Jivens organization. In the videotapes, Moss can be seen hiding a firearm in a flowerpot in the yard on one occasion. When the police searched the apartment where Moss conducted this activity, the officers found guns and ammunition; in the yard, they discovered cocaine. In another surveillance videotape, the jury heard Ricky Jivens angrily denounce Moss for failing to pay Jivens his entire debt and threaten to cut off Moss from future cocaine deliveries. Next the videotape shows Jivens telephoning someone. It is clear from the context that he is calling Moss. Further, Jerome Richardson testified that Moss was a member of the conspiracy and that a minor know as "Little Charlie" worked for Moss. Therefore, based on evidence other than CJR's testimony, the jury could have reasonably found that the Government proved Moss guilty beyond a reasonable doubt on all four counts.

involved sources that provided their information before Moss' eighteenth birthday." The district court rejected this argument and adopted the Probation Officer's finding that Moss was responsible for at least five kilograms but less than fifteen kilograms of cocaine base (Base Offense Level 40). We agree.

1. *Standard of Review.*

Sentencing issues present predominantly factual issues which are reviewed under a clearly erroneous standard. 18 U.S.C. § 3742(e); *United States v. Cain,* 881 F.2d 980, 982 (11th Cir.1989).

2. *Analysis.*

Where there is one continuous conspiracy, and the defendant has straddled his eighteenth birthday by membership in that conspiracy both before and after that significant day, his prior acts could be found to be the sole basis for guilt. *United States v. Cruz,* 805 F.2d 1464 (11th Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987). Nevertheless, the district court charged the jury that they could find Moss guilty only for acts that he committed after his eighteenth birthday.[8] Under a clearly erroneous standard, we determine that the district court was correct in sentencing Moss merely by our looking at the evidence against him after he turned eighteen on July 21, 1991.

The Government introduced into evidence a July 23, 1991, audio tape of the first telephone call made (at its request) by undercover informant Jerome Richardson to Ricky Jivens. On the

---

[8]Although this instruction was proposed by the Government, it appears that Moss received the benefit of instruction to which he was not entitled. *See United States v. Cruz,* 805 F.2d 1464 (11th Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987).

tape, Richardson tells Jivens that the police have been questioning him about certain of Jivens' activities. Jivens asks Richardson if the police have inquired about certain individuals; one of the first names Jivens mentions on the tape is "Muffie," Moss' nickname. Richardson testified that he was at a Savannah bar in August 1991, with Moss. Moss' pager went off and Moss dispatched a young man named Telly to get an ounce of cocaine. Richardson further testified that Moss delivered $20,000 on one occasion, and $10,000 on another occasion, to Jivens. In a September 18, 1991, videotape introduced into evidence by the Government, Ricky Jivens states that he is tired of Moss "shorting him" on payments. The last undercover call made from Richardson to Moss occurred after Ricky Jivens was arrested on September 20, 1991. Agents directed Richardson to call Moss and to pose as Ricky Jivens. Moss told Richardson, thinking him to be Jivens, "[that] it was a slow day." When Moss was arrested that night, he was in the company of Michael Williams, another indicted coconspirator, and had a cellular telephone and a pager in his possession.

Even considering only Moss' post-eighteen criminal conduct, we find there is ample evidence against Moss to substantiate the sentences for the offenses of which he was convicted. [9] The district court was not clearly erroneous in its finding that Moss had a base offense level of 40 and in sentencing him accordingly.

---

[9]Moss was convicted of: conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (Count One); employing a minor to distribute controlled substances, in violation of 21 U.S.C. § 861(a)(1) (Count Two); use of a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Three); and use of a communication facility to commit a drug felony, in violation of 21 U.S.C. § 843(b) and (c) (Count Ten).

C. *Brown—Vouching for Witness*

Brown argues that the prosecutor impermissibly vouched for the veracity of a pivotal Government witness, Jerome Richardson, in his closing argument, *citing United States v. Sims,* 719 F.2d 375, 377 (11th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). He contends that plain error was committed when the prosecutor told the jury that, in effect, a federal judge found Richardson credible enough to issue a search warrant.[10] Brown

---

[10]The prosecutor stated:

> Moving on to John Brown, Big John. The juvenile said John Brown used to pick Ricky up, and he knew money was picked up from John Brown. Jerome Richardson stated that a year and a half ago, before he was an informant, John Brown brought Jivens, Ricky, $15,000 at Waldburg and Lincoln. Ground zero for the Ricky Jivens' cocaine operation.

> Jerome Richardson said, and you saw evidence of this on the videos, that John Brown was the one, John was the one who didn't return Ricky's pages enough—promptly enough to satisfy the boss. And Jerome Richardson testified that he went to 40 C Lakeside Apartments to pick up the money that Ricky had directed them to go pick up from John Brown, a sum greater than $10,000 and bring back to Ricky.

> *Now as Agent Snider testified, that information was the sole basis the agents had to go seek the search warrant on Mr. Brown. And a judge, state or federal, is not going to give a Drug Enforcement Administration agent or any law enforcement officer a search warrant to search anybody's house for no reason. They got to have some showing and the showing, as Mr. Snider testified to, was largely a narrative of what Jerome Richardson had related in other aspects of the case.*

> *And what do the agents find when they go out there? Drugs, cash, glassine bags, a ledger, completely corroborating what Jerome Richardson testified to.*

> Look at the Government's "28" series exhibits. They show beyond a shadow of a doubt John Brown to be dealing cocaine and the other evidence in the case shows John Brown to have been dealing cocaine for and

asserts that the effect of these remarks was to place the prestige and office of the judiciary behind Richardson and turn the judge into a witness for the prosecution. The Government argues that it was merely suggesting to the jurors that DEA agents were successful in obtaining a search warrant based on Jerome Richardson's information and the resulting search confirmed that information. We agree.

1. *Standard of Review.*

Absent a contemporaneous objection, the propriety of the Government's closing argument and alleged prosecutorial misconduct in improperly vouching for a witness' credibility are reviewed under a plain error standard. Fed.R.Crim.P. 52(b); *United States v. Lacayo,* 758 F.2d 1559, 1564 (11th Cir.), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985).

2. *Analysis.*

Attempts to bolster a witness by vouching for his credibility are normally improper and constitute error. *United States v. Ellis,* 547 F.2d 863, 869 (5th Cir.1977). It is improper for the prosecution to place the prestige of the Government behind a witness by making explicit personal assurances of the witness' veracity. *United States v. Eley,* 723 F.2d 1522, 1526 (11th Cir.1984). We denounce lawyers who give their personal opinion that "I believe the witness is telling the truth." *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

Here we have undertaken to weigh the prosecutor's comments in the context of the entire trial. We are persuaded that the

with Ricky Jivens. (Emphasis added.)

incident was neither vouching nor an attempt to invoke the court as a guarantor of truthfulness.  When the prosecutor stated "[a]nd a judge, state or federal, is not going to give a ... law enforcement officer a search warrant to search anybody's house for no reason ...," this was a suggestion to the jury that the information Richardson gave to the court to support the warrant was confirmed by the search, and, lo and behold, these very articles were found. "The prohibition against vouching does not forbid prosecutors from arguing credibility ... it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury."  *United States v. Hernandez,* 921 F.2d 1569, 1573 (11th Cir.1991).  The remarks were designed to refer the jury to evidence in the case that was favorable to the Government.  *Id.*

To the extent that the prosecutor might have been interpreted as saying, "The judge who issued the search warrant must have believed that Richardson was a credible person or he would not have issued a search warrant on the basis of his statement," this would have been offensive vouching.  Brown strains to reach this interpretation however.  The question is:  what did the agents find when they got there?  The same things Richardson said they would find.  While the prosecutor teetered on the line dividing a proper from an improper closing argument, his comments were not an explicit personal or judicial endorsement of credibility and, in the absence of objection, do not constitute plain error.

D. *Reddick—Sufficiency of the Evidence*

The indictment named Reddick as an aider and abettor who willfully assisted Ricky Jivens in the conspiracy by serving as his

nominee.  He was also charged with a single substantive money laundering violation by knowingly becoming the lessee of record on property located at 102 Chowning Drive in Savannah to conceal Jivens' interest.  Reddick contends that the Government's evidence at trial was insufficient to support his convictions on both counts.  We agree.

1. *Standard of Review.*

In reviewing the sufficiency of the evidence, this Court is limited to inquiring whether, construing the evidence and drawing all inferences and credibility choices in the Government's favor, any reasonable jury could have found the defendants guilty beyond a reasonable doubt.  *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942);  *United States v. Van Hemelryck,* 945 F.2d 1493, 1499 (11th Cir.1991).

2. *Analysis.*

To support a conviction for conspiracy, the Government must prove that a conspiracy existed, that the defendant had knowledge of the essential aims of the conspiracy, and that with such knowledge, the defendant joined the conspiracy. *United States v. Blasco,* 702 F.2d 1315, 1330 (11th Cir.1983).  To be guilty of aiding and abetting a conspiracy, a defendant need only "associate himself with the crime, participate in it as something he wishes to bring about, and seek by his actions to make it succeed." *United States v. Pepe,* 747 F.2d 632, 665 (11th Cir.1984).  An aiding and abetting offense occurs when a defendant assists the perpetrator of the crime while sharing in the requisite criminal intent. *United States v. Martinez,* 555 F.2d 1269, 1271 (5th Cir.1977).  On the

money laundering count, the Government must show that the willful aiding and abetting are acts that are integral and important to the successful operation of a drug conspiracy. *United States v. Perez,* 922 F.2d 782, 786 (11th Cir.), *cert. denied,* 501 U.S. 1223, 111 S.Ct. 2840, 115 L.Ed.2d 1009 (1991).

Government evidence consisted chiefly of the testimony of two witnesses, David Smith, the leasing agent, and Chris Cochran, a mutual acquaintance of both Jivens and Reddick. Smith testified that Reddick leased the Chowning Drive house from him in November 1990 for twelve months at $675.00 per month. The Government presented evidence showing that Reddick provided false written statements to the leasing agent, indicating that he intended to live there with his wife and two children. On the lease, Reddick listed his current address as 3211 Martha Street. Smith, the agent, testified that he made one visit to the Chowning Drive house during the lease period. At that time he was met at the door by a young lady with a baby. The Government contends that the jury inferred this was Danielle Jones and her child by Ricky Jivens.

Cochran testified that Jivens first asked him to rent the house and he agreed. When Cochran couldn't pass the requisite credit check, Cochran testified that Jivens, in Cochran's presence, then asked Reddick to rent the house for him and Reddick agreed. Reddick contends, and the Government does not dispute, that Jivens needed to rent a house in which his girlfriend could live so that his "wife," Renee, would not find out. Reddick claims that the evidence did not show a criminal intent, but merely an intent to do a favor for a friend.

The Government introduced physical evidence that within the lease period Reddick also rented a boat slip and listed Martha Street as his residence address. A warranty deed indicated that Reddick owned the home at Martha Street. Government exhibit 29a was a $3,000 money order from John Brown to Levon Bazemore, found in a car that also contained an automobile service bill in the name of Grady Reddick.

The Government argues that the same evidence establishes Reddick's guilt on both counts. We disagree.

As to the money laundering count, the record shows that Reddick executed the lease to conceal the identity of the lessee. However, there is no evidence that indicates Reddick concealed or disguised the source of the rental payments. The record fails to show that Reddick knew that Jivens' money was obtained through illegal means or that Reddick profited from the transaction in any way. The lease of the house as a place of abode for Jivens' girlfriend was not connected by any evidence to drug violations.

Similarly there was insufficient evidence on the conspiracy count to prove that Reddick participated in any of the acts of murder, narcotics trafficking or turf warfare. No evidence showed that he associated with any gang member other than Ricky Jivens himself. No evidence showed that he "got down," took drugs, bought drugs, or sold drugs. No evidence showed that Reddick knew of the drug conspiracy or agreed through any act to become a member or to aid and abet a member. The Government argues that it was "readily inferable" that Reddick was an aider and abettor to the conspiracy because "he was in close association" with Ricky Jivens. It is not

enough that Reddick knew Jivens. It is not enough that Reddick leased a house for Jivens. Association with a coconspirator is insufficient to prove participation in a conspiracy. *United States v. Kelly,* 749 F.2d 1541 (11th Cir.), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985). At a minimum, the defendant must willfully associate himself in some way with the criminal venture and willfully participate in it as he would in something he wished to bring about. *United States v. Hernandez,* 896 F.2d 513 (11th Cir.), *cert. denied,* 498 U.S. 858, 111 S.Ct. 159, 112 L.Ed.2d 125 (1990). We conclude that the Government's evidence was insufficient to convict Reddick under either count and we reverse his convictions.

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the convictions and sentences of Moss and Brown, but we REVERSE Reddick's convictions.

AFFIRMED in part and REVERSED in part.