[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 10, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-11910
Non-Argument Calendar

_____

D. C. Docket No. 03-20678-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JABORIE BROWN,
CORNELL ADLEY,
TRAVIS HORNE,
DERRICK HERRON,
ANTHONY WILLIAMS,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(April 10, 2007)**

Before BLACK, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Jaborie Brown, Cornell Adley, Travis Horne, Derrick Herron, and Anthony Williams[1] (collectively "the defendants") challenge their convictions following a jury trial in the Southern District of Florida. Horne also challenges his sentence of 365 months' imprisonment.

The government alleged twenty-two counts against the five defendants in a superseding indictment, issued after Kiandree Glee, named in the original indictment, pled guilty and agreed to cooperate with the government at trial. The defendants were accused of committing a series of violent crimes, including a number of armed robberies and home invasions, allegedly perpetrated to raise enough money to purchase a large quantity of drugs in order to open and operate a drug hole— an apartment where they would break the drugs up into smaller quantities and sell it at a profit.

The superseding indictment charged all five defendants with conspiracies running from June 1997 to November 1999 to possess with intent to distribute cocaine, to commit Hobbs Act robbery, and to use firearms in furtherance of drug trafficking crimes and violent crimes. The indictment also included various charges against the defendants individually, arising from related incidents, for possession with intent to distribute cocaine, attempted Hobbs Act robbery, and

---

[1]Brown and Williams are proceeding *pro se.*

using a firearm in furtherance of a drug trafficking crime and crime of violence. The jury found the defendants guilty of the conspiracy charges, and guilty as to some of the individual charges. Brown, Herron, and Horne were each acquitted on at least one of the individual charges for which they were indicted.

## I.    Sufficiency of the Indictment

On appeal, Williams and Brown argue that the superseding indictment was defective because it failed to explicitly invoke the district court's jurisdiction under 18 U.S.C. § 3231 and was not authentic based on the lack of a notary seal or court clerk's signature. Williams also asserts that the indictment's Hobbs Act robbery counts failed to state an offense because they had not alleged that he attempted to obtain government property, did not allege that he had moved in interstate commerce, and did not allege that the robberies substantially affected interstate commerce.

We review *de novo* the sufficiency of an indictment. *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003). We also review *de novo* whether the district court had subject matter jurisdiction. *United States v. Giraldo-Prado*, 150 F.3d 1328, 1329 (11th Cir. 1998) (per curiam).

A motion alleging a defect in the indictment must be made before trial, unless the alleged defect is a failure to invoke the district court's jurisdiction or to

3

state an offense. Fed. R. Crim. P. 12(b)(3)(B). "Congress has provided the district courts with jurisdiction . . . of 'all offenses against the laws of the United States.'" *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000) (per curiam) (quoting 18 U.S.C. § 3231). Where an indictment charges a defendant with violating the laws of the United States, § 3231 provides the district court with subject matter jurisdiction and empowers it to enter judgment on the indictment. *Id.* at 734-35.

There are two essential elements "for a Hobbs Act prosecution: robbery and an effect on commerce." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000) (per curiam). "The government needs only establish a minimal effect on interstate commerce to support a violation of the Hobbs Act." *Id.* Robbery of an individual violates the Hobbs Act when "(1) the crime depletes the assets of an individual who is directly engaged in interstate commerce; (2) the crime causes the individual to deplete the assets of an entity engaged in interstate commerce; *or* (3) the number of individuals victimized or sums involved are so large that there will be a cumulative impact on interstate commerce." *United States v. Diaz*, 248 F.3d 1065, 1085 (11th Cir. 2001).

The superseding indictment in this case was sufficient. It charged Brown and Williams with violations of the laws of the United States: 18 U.S.C. §§ 2, 924(c)(1)(A)(i)–(iii), 924(o), 1951(a) and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii),

4

841(b)(1)(B)(ii), 846. This invoked the district court's subject matter jurisdiction under 18 U.S.C. § 3231. *Alikhani*, 200 F.3d at 734–35. Further, the conduct alleged in the Hobbs Act robbery counts of the indictment against Williams—conspiracy to obstruct, delay, and affect commerce by robbery and attempt to obstruct, delay, and affect commerce by robbery of cocaine—sufficiently stated violations of 18 U.S.C. §§ 2, 1951(a). Neither theft of government property, travel across state lines, nor actual substantial effect on interstate commerce by a single crime are required for a violation of the Hobbs Act. *See Diaz*, 248 F.3d at 1085. Williams's argument regarding the authenticity of the indictment was not raised before trial began, and is therefore barred by Fed. R. Crim. P. 12(b)(3)(B).

## II.     Sufficiency of the Evidence

Brown, Herron, and Williams argue that there was insufficient evidence presented for a reasonable jury to find them guilty beyond a reasonable doubt. Herron and Williams assert that the cases against them in general were solely based on the testimony of cooperating co-defendant Glee, who was an untrustworthy witness. Brown also notes Glee's character flaws, but focuses on whether the government was able to show his intent to conspire.

We review *de novo* the sufficiency of evidence, viewing all evidence in the

5

light most favorable to the government, to determine whether a reasonable jury could conclude that the defendant was guilty beyond a reasonable doubt. *United States v. Futrell*, 209 F.3d 1286, 1288 (11th Cir. 2000) (per curiam); *United States v. Pedro*, 999 F.2d 497, 500 (11th Cir. 1993).

In general, to support a conspiracy conviction, the government must prove that there was an agreement between two or more persons to commit a crime, that the defendant knew of the conspiratorial goal, and that the defendant voluntarily participated in furthering the goal. *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir. 1990).

Even the uncorroborated testimony of an accomplice is sufficient to support a conviction if the testimony is not on its face incredible or otherwise insubstantial. *United States v. Le Quire*, 943 F.2d 1554, 1562 (11th Cir. 1991). It is the jury's exclusive province to determine whether a witness was credible, and we do not intrude on that province. *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997).

There was sufficient evidence presented at trial for the jury to find Brown, Herron, and Williams guilty beyond a reasonable doubt. Glee testified about the participation of all three men in the planning and commission of armed violent crimes for the purpose of raising money for the drug hole. This testimony showed

6

that Glee, Brown, and Adley were the original conspirators, that Herron was added when Adley was arrested in late 1998, and that Williams was added when Herron was removed from the group in mid-1999. With regards to Brown's intent to conspire, Glee specifically testified as to Brown's participation in the planning of crimes, that Brown was in charge of managing the pooled money prior to the opening of the drug hole, and that Brown received a portion of the profits from the drug hole once it was opened. As Glee's testimony was not incredible on its face, this was sufficient for the jury to find Brown, Herron, and Williams guilty beyond a reasonable doubt. *See Le Quire*, 943 F.2d at 1562. Further, Glee's testimony was corroborated by a series of jailhouse informants, police officers involved in the investigations of some of the overt acts, and the victims of those crimes.

## III. Severance

Adley and Herron argue that the district court abused its discretion in denying their motions to sever *pro se* co-defendants Brown and Williams and that they were prejudiced by this denial. They assert that the district court failed to prevent the possibility of prejudice because (1) it did not appoint standby counsel for Williams; (2) it did not instruct the jury at the outset that anything said by a *pro se* defendant in his 'lawyer' role was not evidence; and (3) Brown and Williams ignored instructions that they would be held to the rules of evidence and that they

7

were to avoid speaking in the first person.

We review for an abuse of discretion the district court's decision whether or not to grant a severance. *United States v. Knowles*, 66 F.3d 1146, 1158 (11th Cir. 1995). "The general rule in this circuit is that defendants who are jointly indicted should be tried together, and this rule has been held to be particularly applicable to conspiracy cases." *United States v. Castillo-Valencia*, 917 F.2d 494, 498 (11th Cir. 1990). "To demonstrate that the district court abused its discretion, a showing of 'compelling prejudice' is required. 'Compelling prejudice' exists where a defendant can demonstrate that without severance, he was unable to receive a fair trial, and the trial court could afford no protection from the prejudice suffered." *Knowles*, 66 F.3d at 1158-59. In determining prejudice, we consider whether the jury was able to make individualized guilt determinations. *Id.* at 1158.

We have "noted with approval" the steps suggested by the Second Circuit to prevent the inherent possibility of prejudice from a trial involving both *pro se* and counseled defendants becoming actual prejudice: "(1) appointing standby counsel; (2) warning the *pro se* defendant that he will be held to the rules of law and evidence; (3) admonishing the defendant that he should refrain from speaking in the first person in his comments on the evidence; (4) instructing the jury prior to closing remarks, during summation, and in final instructions that nothing the

8

lawyers said is evidence in the case; and (5) making it clear to the jury at the outset that anything the *pro se* defendant says in his 'lawyer' role is not evidence." *Id.* at 1160 (discussing *United States v. Sacco*, 563 F.2d 552 (2d Cir. 1977)). However, "these steps are suggestions, not requirements, for preventing the possibility of prejudice from ripening into actuality." *United States v. Veteto*, 701 F.2d 136, 139 (11th Cir. 1983).

Because Adley and Herron cannot demonstrate prejudice, the district court did not abuse its discretion in denying their motions to sever. As they acknowledge, the district court followed several of the suggestions from *Sacco*, appointing standby counsel for the *pro se* defendant who accepted it, warning the *pro se* defendants that they were bound by the rules of evidence, and instructing the jury that comments made by lawyers were not evidence. The specific situations with potential prejudice that they note are (1) a single cross-examination where Brown several times attempted to go beyond the scope of direct examination, and the district court, therefore, sustained the government's objections to this effect; and (2) statements by Williams during closing arguments that referenced educational and employment information about some of the jurors. The district court minimized any potential prejudice from these incidents by (1) subjecting the remainder of Brown's questions to pre-approval outside of the

presence of the jury; and (2) by preventing any further problematic statements by Williams during closing arguments, inquiring of the jury to determine whether their ability to render an impartial verdict had been impacted, and instructing them that the defendants did not possess any personal information beyond that revealed in the jury questionnaires, which had not included the jurors names, addresses, or other identifying information.[2]  Further, the jury acquitted Brown, Herron, and Horne of several of the charges against them, demonstrating a continued ability to make individualized determinations as to guilt.  *See Knowles*, 66 F.3d at 1158. Accordingly, Adley and Herron have not demonstrated "compelling prejudice."

## IV.    Rule 404(b) Evidence

Adley and Herron argue that the district court abused its discretion in admitting evidence against them under Fed. R. Evid. 404(b).  They argue that the district court abused its discretion by admitting 404(b) evidence because the

---

[2] In his sole argument on appeal, Horne asserts that the district court abused its discretion in failing to conduct any jury inquiry following Williams's remarks.  This argument is without merit because the district court did conduct an inquiry into the potential prejudicial effect of Williams's statements.  To the extent that Williams attempts to argue in his reply brief that, although there was an inquiry, the manner of the inquiry was insufficient, he has abandoned this argument by failing to raise it in his initial brief.  *See United States v. Thomas*, 242 F.3d 1028, 1033 (11th Cir. 2001).  Even assuming that Horne's argument is not abandoned, the district court did not abuse its discretion by not interrogating each juror separately.  Here, Horne has not made "an adequate showing of extrinsic influence to overcome the presumption of jury impartiality," *United States v. Cousins*, 842 F.2d 1245, 1247 (11th Cir. 1988), and the district court's inquiry was sufficient under the circumstances.  *See United States v. Khoury*, 539 F.2d 441, 443 (5th Cir. 1976) (district court's "discretion extends to the type of investigation required" to ascertain whether jury is prejudiced).

government's other evidence, if believed, clearly demonstrated intent; therefore, the 404(b) evidence served no purpose other than to show criminal propensity and bolster the credibility of government witnesses.

We review the admission of Rule 404(b) evidence for an abuse of discretion. *United States v. Matthews* (*Matthews II*), 431 F.3d 1296, 1311 (11th Cir.) (per curiam), *cert. denied*, 127 S. Ct. 46 (2006).

Federal Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

In order to be admissible under this rule "the evidence must be relevant to an issue other than the defendant's character," "the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act," and "the probative value of the evidence must not be substantially outweighed by its undue prejudice." *Matthews II*, 431 F.3d at 1310-11. Factors to be considered in assessing whether the probative value of the evidence is substantially outweighed by its unduly prejudicial impact "include the strength of the government's case on the issue of intent, the overall similarity of the extrinsic and charged offenses, the amount of time separating the extrinsic and charged offenses and whether it

11

appeared at the commencement of trial that the defendant would contest the issue of intent." *United States v. Dorsey*, 819 F.2d 1055, 1061 (11th Cir. 1987).

Adley and Herron rely on *United States v. Matthews* (*Matthews I*), 411 F.3d 1210 (11th Cir. 2005), *vacated by Matthews II*, 431 F.3d 1296. In *Matthews I*, a panel of this Court held that the district court abused its discretion in admitting 404(b) evidence of prior drug trafficking in order to prove intent in a later drug conspiracy because it was "impossible for us to imagine a scenario under which the jury could have found that Matthews committed any of the acts described by his accusers and yet lacked the requisite guilty intent." *Matthews I*, 411 F.3d at 1223-25, 1228. The panel noted that the government's true need for the evidence was not to show intent, but rather to bolster the credibility of its own witnesses in their testimony that the defendant had actually engaged in the actions he was accused of. *Id.* at 1225. However, in *Matthews II*, we vacated the *Matthews I* opinion in its entirety, and concluded that there was no abuse of discretion. *Matthews II*, 431 F.3d at 1298, 1312. In *Matthews II*, we held that in every conspiracy case, a plea of not guilty renders the defendant's intent a material issue, and evidence of extrinsic acts may be probative unless the defendant affirmatively takes the issue of intent out of the case. *Id.* at 1310-11.

The district court did not abuse its discretion in admitting evidence of Adley

12

and Herron's extrinsic acts. The act admitted against Adley under 404(b) was a November 1994 carjacking committed with Brown, and Adley's subsequent guilty plea and convictions for attempted second degree murder with a firearm, attempted first degree murder, and unlawful possession of a firearm by a convicted felon. The evidence admitted against Herron under 404(b) was (1) a November 1999 no contest plea to possession with intent to sell marijuana; (2) a July 2000 armed carjacking that Herron participated in with Glee; (3) a January 2002 guilty plea to possession with intent to sell marijuana; and (4) an August 2003 guilty plea to marijuana distribution. Herron was charged with conspiracy to possess with intent to distribute cocaine, and his not guilty plea to that charge rendered his intent a material issue. *Matthews II*, 431 F.3d at 1310-11. Therefore, in the absence of any action on Herron's part to take the issue of intent out of the case, his prior convictions for drug distribution are probative in demonstrating intent to conspire to possess with intent to distribute cocaine. *See id.* Likewise, Adley and Herron were charged with conspiracy to use a firearm in furtherance of a crime of violence, and their not guilty pleas on that charge rendered their intent at issue and their prior use of firearms in the commission of violent crimes probative to that issue. *See id.*

The certified convictions were sufficient to allow the jury to conclude that

13

Adley and Herron had committed the 1994 carjacking and the 1999, 2002, and 2003 drug distribution crimes, respectively. Further, Glee's testimony that Adley told Glee about the 2000 carjacking and the victim's testimony describing the carjacking were sufficient for the jury to conclude that Adley had committed the act. Finally, and especially in light of the district court's limiting instructions, Adley and Herron cannot show that the admission of evidence of their extrinsic acts was more unduly prejudicial than it was probative.

## V. Violation of *Brady*

Herron argues that the district court abused its discretion in denying his post-verdict motion for a new trial, which was based on asserted *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), violations that were revealed in the Presentence Investigation Report ("PSI"). Herron contends that while he was able to cross-examine Glee with general impeachment information relating to Glee's criminal record and the benefits Glee expected to gain from testifying, there was no evidence available at trial of specific falsehoods or inconsistencies in Glee's testimony. Herron claims that information provided to the probation officer and revealed in the PSI included evidence specifically contradicting Glee's trial testimony, including Glee's own statements to the police regarding the Collins robbery and victim statements regarding the first Anderson robbery. Herron

14

argues that there is a reasonable probability that, had this impeachment material been available at trial, the result would have been different, especially because the impeachment material included instances of Glee lying about the crimes in question in order to avoid punishment.

We review *de novo* whether a violation of *Brady* occurred below. *United States v. Schlei*, 122 F.3d 944, 989 (11th Cir. 1997). We review the district court's findings of fact under the clearly erroneous standard. *Stano v. Butterworth*, 51 F.3d 942, 944 (11th Cir. 1995).

The government violates a defendant's right to due process when it suppresses requested evidence that is favorable to the accused. *United States v. Newton*, 44 F.3d 913, 918 (11th Cir. 1993). There is constitutional error, however, only if the suppressed evidence is material; that is, if there is a reasonably probability that disclosure would have produced a different result at trial. *Id.* In order to obtain a new trial, a defendant alleging a violation of *Brady* must show "(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the

15

proceedings would have been different." *Id.*

There was no *Brady* error in the district court. There was no *Brady* error regarding the Collins robbery because the defendants were already in possession of the information that Glee had lied in a sworn statement to the police after that robbery. Even if Herron was not personally aware of the false statement prior to trial, he could have obtained it from his co-defendants and he had ample opportunity to cross-examine Glee when the information was revealed during Glee's testimony.

There was no *Brady* violation regarding the relation of the first Anderson home invasion as contained in the PSI. The district court made the factual determination that the police report, relied upon in the PSI, describing the "first Anderson home invasion," was not related to the first robbery of the Anderson residence described in testimony at trial. This factual finding was not clearly erroneous. Therefore, the information in the police report, as revealed in the PSI, was not material.

## VI. Use of Prior Convictions to Support Sentence Enhancements

Herron argues that the district court erred in using his prior convictions to enhance his sentence. He acknowledges that this argument is foreclosed, but desires to preserve the issue.

16

We review *de novo* constitutional challenges to a sentence. *United States v. Cantellano*, 430 F.3d 1142, 1144 (11th Cir.) (per curiam), *cert. denied*, 126 S. Ct. 1604, 164 L. Ed. 2d 325 (2006). As Herron acknowledges, we have repeatedly held that *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), is still good law. *United States v. Greer*, 440 F.3d 1267, 1273-74 (11th Cir. 2006). Accordingly, the district court did not err in finding that Herron had prior convictions and using them to enhance Herron's sentence.

## VII.  The Reasonableness of Herron's Sentence

Herron argues that his sentence was unreasonable because the district court failed to consider the 18 U.S.C. § 3553(a) factors. He asserts that, in sentencing him to an "excessive and not reasonable" 365 months' imprisonment, at the upper end of the guidelines range, the district court ignored the facts he had presented.

"After the district court has accurately calculated the Guideline range," we review the final sentence for reasonableness. *United States v. Winingear*, 422 F.3d 1241, 1244 (11th Cir. 2005) (per curiam). The factors that act as a guide in determining whether a sentence was reasonable are found in 18 U.S.C. § 3553(a). *Id.* at 1246. "These factors include the available sentences, the applicable Guideline range, the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law,

17

provide just punishment for the offense, and provide the defendant with needed medical care." *Id.* Other factors are the need for the sentence to protect the community from the defendant and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). A sentence within the guidelines range is neither *per se* reasonable, *United States v. Talley*, 431 F.3d 784, 786-88 (11th Cir. 2005) (per curiam), nor entitled to a presumption of reasonableness, *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006).

"After *Booker*, a sentence may be reviewed for procedural or substantive unreasonableness. A sentence may be unreasonable if it is the product of a procedure that does not follow *Booker*'s requirements, regardless of the actual sentence." *Hunt*, 459 F.3d at 1182 n3. "[W]hen the district court considers the factors of § 3553(a), it need not discuss each of them." *Talley*, 431 F.3d at 786. "[A]n acknowledgment by the district court that it has considered the defendant's argument and the factors in § 3553(a) is sufficient." *Id.*

The district court here correctly calculated the guideline range, and although it did not explicitly state that it was considering the § 3553(a) factors, it did so in fashioning its sentence. The district court heard the government's arguments regarding Herron's criminal history, the need to avoid sentencing disparity

18

between Herron and his co-defendants, Herron's continued criminal conduct after the instant offenses, and the violent nature of some of Herron's crimes committed in furtherance of the instant conspiracies. The district court also heard Herron's arguments about his background, criminal history, the possibility of rehabilitation after prison, and the court's authority to use a lengthy term of supervised release to protect the community after Herron was released from prison. Further, in pronouncing the sentence, the district court noted that the sentence was at the top of the guideline range and was appropriate to meet the sentencing objectives of punishment, deterrence, and protection of the community. Thus, in sentencing Herron, the district court considered the guideline range, the kinds of sentences available, the nature and circumstances of the offenses, and the need for the sentence to reflect the seriousness of the offenses, provide just punishment, and protect the community. *See* U.S.C. § 3553(a). In addition, Herron's 365-month sentence was substantially less than the statutory maximum of life imprisonment. Therefore, Herron's sentence was both procedurally and substantively reasonable.

After careful consideration of the briefs of the parties, and thorough review of the record, we find no reversible error. Accordingly, we affirm the convictions and sentences of Adley, Brown, Herron, Horne, and Williams.

**AFFIRMED.**

19