[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15844
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 24, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-00001-CR-ORL-18-DAB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIN SHARMA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 24, 2010)

Before DUBINA, Chief Judge, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Erin Sharma appeals her convictions and total sentence of life

imprisonment imposed after a jury found her guilty of violating 18 U.S.C. §§ 241 and 242 and found that her actions caused the resulting death of a federal prison inmate. Sharma's convictions stem from events that occurred at the Coleman Federal Correctional Institution where she worked as a corrections officer. Specifically, in 2005, an inmate named John McCullah assaulted his cell mate Richard Delano and Delano subsequently died from his injuries. At trial, the government presented evidence that Sharma and another corrections officer intentionally moved Delano into McCullah's cell, anticipating that McCullah would assault Delano.[1] Sharma raises three issues on appeal.

## I.

First, Sharma argues that the district court erred by denying her motion for a judgment of acquittal and not finding that the government failed to prove beyond a reasonable doubt that Sharma was the proximate cause of the federal prison inmate's death. In making this argument, Sharma does not contest her convictions. Instead, she asserts that she should only have been subjected to a maximum ten-year sentence, rather than a life sentence, because the government failed to prove

[1]While collecting food trays, Sharma had an encounter with Delano, who grabbed her arm and pulled it against his cell. This caused an injury to Sharma's arm. Later, Sharma asked her supervisor if Delano could be moved into McCullah's cell. Sharma knew that McCullah was a violent inmate. The government presented evidence at trial that Sharma asked McCullah to kill Delano, and McCullah told Sharma that he was going to kill Delano.

beyond a reasonable doubt that Delano's death was a natural and foreseeable consequence of her actions.

We review the district court's denial of a motion for acquittal *de novo*. *United States v. Evans*, 473 F.3d 1115, 1118 (11th Cir. 2006). "When the motion raises a challenge to the sufficiency of the evidence, we review the sufficiency of the evidence de novo, drawing all reasonable inferences in the government's favor." *Id.* (internal quotation marks omitted). "To affirm the denial, we need determine only that a reasonable factfinder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation marks and alteration omitted).

> Section 241 of Title 18 of the U.S. Code provides that:
>
> If two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States . . . .
>
> . . . .
>
> They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section . . . they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 241. Furthermore, 18 U.S.C. § 242 states that:

> Whoever, under color of any law, . . . willfully subjects any person . . .

to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, . . . , shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section . . . shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section . . . shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 242.

In *United States v. Hayes*, 589 F.2d 811, 815, 820 (5th Cir. 1979),[2] the defendant, a chief of police, claimed that he was not responsible for the victim's death because he did not intend the victim's death. In that case, the defendant took the victim to a deserted gravel road, hit the victim with the butt and the barrel of a loaded shotgun, and claimed that the shotgun accidentally discharged when the victim pushed the gun aside. *Id.* at 815-16. In interpreting § 242, our predecessor court held that in order for a defendant to be liable for a resulting death, the government needs to prove "that death ensued as a proximate result of the accuseds' willful violation of a victim's defined rights." *Id.* at 820. Moreover, the court stated that:

[a] fundamental principle of criminal law is that a person is held

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

4

responsible for all consequences proximately caused by his criminal conduct. Thus, where events are foreseeable and naturally result from one's criminal conduct, the chain of legal causation is considered unbroken and the perpetrator is held criminally responsible for the resulting harm.

*Id.* at 821.

Consequently, the court rejected the defendant's argument that § 242 required that the victim's death be intentional, because "[n]o matter how you slice it, 'if death results' does not mean 'if death was intended.'" *Id.* at 821. Thus, "the more severe punishment prescribed for those Section 242 violations resulting in death is clearly designed to deter the type of conduct that creates an unacceptable risk of loss of life." *Id.* at 821. Accordingly, the court held that the defendant was properly held accountable for the victim's death because the risk of death resulting from being struck in the stomach with a loaded shotgun was precisely such an unacceptable risk, given that "[l]oaded guns are designed to injure and kill." *Id.*

In the present case, drawing all inferences in the government's favor, a reasonable factfinder could conclude that Sharma's criminal violations of §§ 241 and 242 were the proximate cause of Delano's death. Accordingly, even though McCullah committed the physical murder after Sharma moved Delano to his cell, drawing all inferences in the government's favor, his criminal act was foreseeable and it did not sever Sharma's criminal liability. Accordingly, we affirm as to this

5

issue.

## II.

Second, Sharma argues that the district court plainly erred by failing to find that she was denied a fundamentally fair trial. As part of this argument, Sharma first asserts that the court should have disqualified Assistant U.S. Attorney Carolyn Adams and the entire U.S. Attorney's Office for the Middle District of Florida from participating in her prosecution. Specifically, Sharma contends that it was foreseeable before trial that the government would call Adams as a witness, yet the government still proceeded under the indictment that Adams obtained. Consequently, Sharma concludes that this denied her a fair trial because a lawyer may not serve both as a lawyer and a witness in the same case. Second, Sharma argues that the court denied her a fair trial by failing to find that the government improperly cross-examined Sharma. Specifically, Sharma asserts that the government's questions on cross-examination that asked her 25 times whether Federal Bureau of Investigation Special Agent James Raby, Jr., was lying were improper because an attorney cannot ask a witness to comment on the veracity of another witness's testimony. Third, Sharma argues that it was error for the government to improperly vouch for Adams's testimony in its closing argument by noting Adams's 29 years of service with the Department of Justice ("DOJ").

6

When a defendant fails to preserve an evidentiary ruling by contemporaneously objecting, our review is limited to plain error. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007). "Absent a contemporaneous objection, the propriety of the Government's closing argument and alleged prosecutorial misconduct in improperly vouching for a witness' credibility are reviewed under a plain error standard." *United States v. Newton*, 44 F.3d 913, 920 (11th Cir. 1995). Under the plain-error standard of review,

> the defendant must show that there is (1) error, (2) that is plain and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings

*Turner*, 474 F.3d at 1276 (internal quotation marks omitted). Finally, where neither the Supreme Court nor our court has addressed an issue, any alleged error cannot be "plain" error. *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir. 2005).

"[T]he cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial might be necessary." *United States v. Preciado-Cordobas*, 981 F.2d 1206, 1215 n.8 (11th Cir.1993). "In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair

7

trial." *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997).

Nevertheless, when a defendant cannot demonstrate any individual errors, "no

cumulative errors can exist." *United States v. Waldon*, 363 F.3d 1103, 1110 (11th

Cir. 2004).

> **A.      Whether the district court plainly erred by not disqualifying Adams and the U.S. Attorney's Office for the Middle District of Florida**

"It is clear that a prosecutor must not act as both prosecutor and witness."

*United States v. Hosford*, 782 F.2d 936, 938 (11th Cir. 1986).  "This is a part of the

general 'advocate-witness' rule that counsel should avoid appearing as both

advocate and witness except under extraordinary circumstances." *Id.*; *see also*

*United States v. Crockett*, 506 F.2d 759, 760 (5th Cir. 1975) ("As a general rule, a

party's attorney should not be called as a witness unless his testimony is both

necessary and unobtainable from other sources.").  In general, the Ninth Circuit has

stated that "[t]he advocate-witness rule generally admits of only one solution to

avoid the improprieties inherent in advocate testimony.  Attorneys must elect in

which capacity they intend to proceed, either as counsel or as a witness, and

promptly withdraw from the conflicting role." *United States v. Prantil*, 764 F.2d

548, 553 (9th Cir. 1985).

While we have not addressed in a published opinion the circumstances of

8

when it might be necessary to disqualify an entire U.S. Attorney's Office from representing the government, the Tenth Circuit has stated that "[d]isqualifying the entire [U.S. Attorney's] office from representing the government raises important separation of powers issues." *United States v. Bolden*, 353 F.3d 870, 875 (10th Cir. 2003). Furthermore, because "the disqualification of Government counsel is a drastic measure," the court stated that it could "only rarely-if ever-imagine a scenario in which a district court could properly disqualify an entire United States Attorney's office." *Id.* (internal quotation marks and alterations omitted). Similarly, the Second Circuit has stated that "[w]hile a private attorney's conflict of interest may require disqualification of that attorney's law firm in certain cases, such an approach is not favored when it comes to the office of a United States Attorney, or, a *fortiori*, to the Department of Justice as a whole." *United States v. Hasarafally*, 529 F.3d 125, 128 (2d Cir. 2008) (internal citations omitted).

Here, we conclude from the record that Sharma has not demonstrated that the district court plainly erred by failing to disqualify Adams and the U.S. Attorney's Office for the Middle District of Florida. In general, Sharma fails to cite any controlling authority to support her assertions of error and, because Adams did not represent the government at trial, the court could hardly disqualify her from participating as counsel. Accordingly, Sharma has failed to show error, much less

9

plain error, in this respect.

**B.      Whether the district court plainly erred by failing to find that the government engaged in improper cross-examination of Sharma**

Several other circuits have held that, because "[d]eterminations of credibility are for the jury, not for witnesses," it is an "error for a prosecutor to induce a witness to testify that another witness, and in particular a government agent, has lied on the stand." *United States v. Boyd*, 54 F.3d 868, 871 (D.C. Cir. 1995) (internal quotation marks omitted).  Thus, in general, these courts hold that "asking one witness whether another is lying is inappropriate." *United States v. Harris*, 471 F.3d 507, 511 (3d Cir. 2006).

As both parties concede, neither we nor the Supreme Court has addressed the propriety of counsel asking a witness to comment on another witness's veracity at trial.  Accordingly, because there is no controlling precedent from either this Court or the Supreme Court on the issue, the district court did not plainly err by failing to find that the government's questions on cross-examination were improper.  Accordingly, Sharma has not shown plain error in this respect.

**C.      Whether the district court plainly erred by failing to find that the government improperly vouched for Adams in its closing argument**

"Attempts to bolster a witness by vouching for his credibility are normally improper and error." *United States v. Sims*, 719 F.2d 375, 377 (11th Cir. 1983)

10

(internal quotation marks omitted). In reviewing a defendant's vouching argument, we examine "whether (1) the prosecutor placed the prestige of the government behind the witness by making explicit personal assurances of the witness' credibility, or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony." *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1177-78 (11th Cir. 2006). We have recognized that, under an exception to the prohibition against vouching called the fair-response rule, a prosecutor can "respond to arguments advanced by defense counsel in his or her statement to the jury." *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir 2009) (internal quotation marks omitted, *pet. for cert. filed*, (U.S. May 18, 2010 (No. 09-10985)).

Sharma has not demonstrated that the district court plainly erred when it failed to find that the government vouched for Adams's testimony. Even assuming that the prosecutor's statement that Adams had worked for the DOJ for 29 years placed the prestige of the government behind Adams's testimony, this statement would fall under the fair-response rule because the government made the statement in response to Sharma's closing argument. Accordingly, we conclude that Sharma has failed to demonstrate that the court erred, much less plainly erred, in this respect.

11

Because Sharma has not demonstrated that the district court committed any individual plain errors, she cannot show that cumulative errors deprived her of a fundamentally fair trial. Accordingly, we affirm as to this issue.

**III.**

Third, Sharma argues that the court erred in applying the sentencing guideline for second-degree murder, U.S.S.G. § 2A1.2, rather than the guideline for involuntary manslaughter, U.S.S.G. § 2A1.4, to calculate Sharma's base offense level because § 2A1.2 requires that the government prove that she intended to kill Delano, and the government concedes that she did not intend to kill Delano. Instead, Sharma argues that § 2A1.4 applies because a mental state of reckless disregard supports a finding of involuntary manslaughter.

We review "the district court's legal interpretation of the statutes and Guidelines de novo." *United States v. Burge*, 407 F.3d 1183, 1186 (11th Cir. 2005). Furthermore, "[w]e review a district court's application of the guidelines to the facts de novo and all factual findings for clear error." *United States v. Kinard*, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006).

For offenses involving individual rights, to determine a defendant's base offense level, U.S.S.G. § 2H1.1(a) requires that a district court apply the greatest of several levels, including the offense level from the guideline applicable to any

12

underlying offense. Under § 2A1.2, the base offense level for second-degree murder is 38. U.S.S.G. § 2A1.2. On the other hand, § 2A1.4 states that for offenses involving involuntary manslaughter, the base offense level is 12 "if the offense involved criminally negligent conduct." *Id.* § 2A1.4(a)(1). But, the base offense level is 18 "if the offense involved reckless conduct." *Id.* § 2A1.4(a)(2)(A).

In general, "[m]urder is the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). While "willful, deliberate, malicious, and premeditated killing" is murder in the first degree, "[a]ny other murder is murder in the second degree." *Id.* Nevertheless, malice aforethought is still an essential element of second-degree murder. *See id.*; *see also United States v. Free*, 574 F.2d 1221, 1222 (5th Cir. 1978). To kill with "malice aforethought" means an intent to take the life of another person either deliberately or intentionally, or to willfully act with callous and wanton disregard for human life. 11th Cir. Pattern Jury Instructions, Offense Instruction 45.3 (2003). Thus, for second-degree murder, the evidence must establish beyond a reasonable doubt that the Defendant intended to kill the victim or willfully did acts with callous and wanton disregard for the consequences and the Defendant knew the acts would result in a serious risk of death or serious bodily harm to the victim. *Id.*

13

Conversely, involuntary manslaughter is the unlawful killing of a human being without malice "[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a); *see also* 11th Cir. Pattern Jury Instructions, Offense Instruction 46.2 (2003) (noting that a defendant can be found guilty of involuntary manslaughter if, among other things, the government proves beyond a reasonable doubt that the death of the victim occurred as a consequence of and while the defendant was engaged in committing an unlawful act not amounting to a felony or in committing a lawful act in an unlawful manner or with wanton and reckless disregard for human life). For involuntary manslaughter,

> the Government need not prove that the Defendant specifically intended to cause the death of the victim, but it must prove more than mere negligence or a failure to use reasonable care by the Defendant; it must, instead, prove gross negligence amounting to "wanton and reckless disregard for human life."

11th Cir. Pattern Jury Instructions, Offense Instruction 46.2 (2003).

Sharma has not demonstrated that the district court erred by applying the guideline for second-degree murder to calculate her base offense level. At trial the government presented sufficient evidence that Sharma knew that there was a great likelihood that McCullah would assault Delano and cause either serious bodily

14

harm or death.  Furthermore, Sharma's unlawful acts amounted to felonies, making involuntary manslaughter guideline inapplicable.  Consequently, we conclude that the district court did not err, and we affirm as to this issue.

## Conclusion

For the above-stated reasons, we affirm Sharma's convictions and life sentence.

**AFFIRMED.**